CLARENCE E. PENNINGTON, by JAMES A. SHAN-
NON, Guardian, v. KANSAS CITY RAILWAYS
COMPANY, Appellant.

In Banc, July 12, 1920.

1. **ADMISSION: Proof: Record Entries in Another Division.** A fact
essential to a cause of action or defense need not be proved if the
adverse party admits it; and when a party enters on the record
its admission of a fact, in order to dispense with the necessity
of pleading it, it need not be proved; and where a fact appears of
record, it is unnecessary to prove it, for the court will take notice
of it; and if the admission of record is made in another division
of the court and preliminary to a formal trial, still it is a part of
the record in the case, and is binding in any division to which the
case may be transferred.

2. ————: ————: ————: **Substituted Defendant.** Where the suit
was brought against the receivers of a street railway appointed by
a Federal court, record recitals that, by agreement, the railway
company, pursuant to a decree of the Federal court, had assumed
the liabilities of the receivers, that the company had been substi-
tuted as a party defendant, that it entered its appearance, that
it entered its waiver of an amendment to the petition to show the

284 Mo.]                    (1)

company was liable if the receivers were, and that the prior plead-
ings against the receivers had been adopted as sufficient to state
a cause of action against the company, are all admissions of rec-
ord by the company that it stood in the shoes of the receivers as
regards liability to plaintiff, and it was unnecessary to prove any
of them, although they were made in another division of the same
court; and although plaintiff thereafter filed an amended petition
in which the assumption by the company of all liabilities of the
receivers was alleged, and said record recitals were not put in evi-
dence, the company is answerable in damages for the tort.

3. NEGLIGENCE: Contributory: Concurrent: Matter of Law. Plain-
tiff's evidence tended to show that he was about fourteen years
old; that he, a brother aged nine and another lad aged fourteen,
started to cross diagonally from the northwest corner of two
streets in each of which were two street-car tracks, at about seven
o'clock in the evening of January 23rd, the place being brilliant-
ly lighted; that they were moving one behind the other and about
three feet apart, plaintiff being in the rear; that an east-bound
car had stopped on the west side of the cross street to admit and
discharge passengers, and having done so moved eastwardly at
the rate of from fifteen to twenty miles an hour, and after travel-
ing 179 feet struck plaintiff just as he was in the act of stepping
over the south rail of the south track; that the fender of the car
caught his legs, causing him to fall backward against the front of
the car, and then to fall into the street between the south rail and
the curb; that when picked up he was lying three or four feet
south of the south rail; that blood had flowed from his head and
formed a pool in the street at that point; that the bell was not
sounded and no warning given; and that the motorman was not
looking ahead at the time, but had opened the door on the north
side of the car's vestibule, to order two boys, who were riding on
the north front steps, to get off, and while doing this, instead of
stopping the car or slacking its speed, he permitted it to run
along at the speed it was under when he turned to the north door.
*Held*, that notwithstanding the plaintiff did not look for the car
and moved upon the south track in seeming unconsciousness of its
approach, the court could not declare, as a matter of law, that he
was not entitled to recover; but it was allowable to permit plain-
tiff to recover upon an instruction requiring the jury to find that
the motorman either saw, or, if duly careful, would have seen the
plaintiff walk upon the track where he was in danger from the
car's advance, that in doing so plaintiff was unconscious of the
danger to which he was exposing himself, and that, by using with
ordinary care the means available, the motorman could have
warned plaintiff of his danger, or could have reduced the speed of
the car, or have stopped it, before it reached plaintiff.

Pennington v. K. C. Railways Co.

4. ———: ———: ———: ———: **No Chance to Stop Car.** Where witnesses testified that the east-bound car was from fifty to sixty feet distant from plaintiff when he stepped over the north rail of the south track on which the car was approaching, that its speed was from fifteen to twenty miles an hour, that plaintiff was in the act of stepping over the south rail when he was struck, and expert witnesses testified that the car, whose speed was from fifteen to twenty miles an hour, could have been stopped within forty or forty-five feet, it cannot be held as a matter of law that the motorman, though negligent in not looking ahead and in failing to sound a warning or to slow down or stop, had no chance to stop the car after plaintiff's peril became apparent, but the question of avoiding hitting him by stopping or checking the car was one for the jury.

5. ———: ———: ———: ———: ———: **Failure to See: Distance Traveled.** Where the distance from the west side of the cross street, where the east-bound car had stopped to discharge passengers, to the place where plaintiff was struck, was 179 feet, and from the east side of the cross street, where the motorman diverted his gaze and opened the north door of the vestibule, to the place of the accident was 119 feet; the three small boys advanced slowly across the street in single file, three feet apart, walking slightly toward the southeast, the plaintiff behind, and plaintiff was struck just as he was in the act of stepping over the south rail of the south track, there was room for the jury to conclude that, if the motorman had kept his attention fixed on the track after the car crossed the cross street, he would have seen the file of boys in time to have averted the accident, either by arousing them to their danger by sounding a warning, or by checking or stopping the car, and also to conclude that, if it was necessary to open the north door of the vestibule to chase away some boys, sitting on the steps, he should have stopped the car while doing so, instead of allowing it to proceed under full headway. Such evidence warrants the inference that it was possible for the motorman, by the exercise of ordinary care in the way of viligence or in an effort to stop the car, to prevent the collision.

6. ———: **Instruction: Should for Could.** The use of the word "should" instead of "could" in the instruction submitting the question whether the motorman, "in the exercise of ordinary care, should have seen and realized the plaintiff was unaware of the approach of said car" was inapt, but under the circumstances of this case had no misleading tendency.

7. **ADDITIONAL ABSTRACT: Untimely Filing: Exception: Unnecessary.** An additional abstract, not filed fifteen days before the appeal was set for hearing, as required by Rule 11, but filed be-

fore joinder of error upon the abstract filed by appellant, even though respondent was negligent and remiss in not filing it in time, will not prevent the court from treating it as a part of the record, when to do so will not tend to prejudice appellant and will prevent a reversal for a default which does not affect the merits. Both by statutes and the principles of the general law, a rule of court should be relaxed in the interest of justice, when to do so will injure neither party.

*Held*, by BLAIR, J., concurring, that respondent is not required to file an additional abstract showing parts of the record which are not relevant to any question appellant has presented for review.

*Held*, by GRAVES, J., dissenting, that failure, without reasonable excuse, to file an additional abstract, when a sufficient record is not made out without it, cannot be condoned because no harm results, and if condoned is to nullify the rules.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

AFFIRMED.

*Richard J. Higgins* and *Ben T. Hardin* for appellant.

(1) The court erred in giving to the jury instruction number 1, as asked by the plaintiff. (a) Because the instruction assumes that plaintiff did not look ''for the approach of said car,'' and that plaintiff was ''unaware of the approach of said car.'' It also assumes that plaintiff was in danger. It assumes also, that if the motorman had ''used said means,'' he would have avoided ''striking and injuring him.'' Hunt v. City of St. Louis, 211 S. W. 677; Henson v. Kansas City, 210 S. W. 17; Ganey v. Kansas City, 259 Mo. 663; Ellis v. Met. Street Ry., 234 Mo. 675; Crow v. Railway, 212 Mo. 610; Coffey v. Carthage, 186 Mo. 584; Wilkerson v. Eilers, 114 Mo. 252; Flannigan v. Nash, 190 Mo. App. 582; Wease v. Tool Co., 187 Mo. App. 719; Bryan v. Lamp Co., 176 Mo. App. 725, 729; Fife v. Ry., 174 Mo. App. 663; Warrington v. Bird, 168 Mo. App. 388. (b) The instruction is erroneous also, in that it submits to the jury the legal question as to whether ''the motorman in charge

of the car should have seen and realized that plaintiff was unaware of the approach of said car." The word "should" imports duty or obligation, and is properly used in an instruction to advise a jury what their duty is, if they find certain facts. That is a question for the court. Kippenbrock v. Railroad, 270 Mo. 479, 485. But here, the court, instead of telling the jury what the duty of the motorman was, under certain circumstances, left it for the jury to say what the motorman should have done, or to say what his duty was. The court must tell the jury what the duty of a motorman is, the violation of which would be negligence; and not leave it to the jury to say what his duty is, or what he should have done, no more than it should be left to the jury to say what their own duties are. "Should" and "ought" are synonymous terms. People v. Barkas, 255 Ill. 526; Smith v. State, 142 Ind. 293. (c) The instruction went outside the issues made by the petition and is broader than the evidence as well. State ex rel. v. Ellison, 213 S. W. 461. The negligence pleaded is that "no reasonable lookout was maintained. "But the petition failed to allege any duty on the part of the motorman to maintain a lookout at the place of the accident. Not being at a street crossing, no absolute duty was enjoined upon the motorman to keep a constant lookout for people to cross the track. Theobald v. Railway, 191 Mo. 432; Eppstein v. Railway, 197 Mo. 723; Hufft v. Railway, 222 Mo. 302; Degonia v. Railroad, 224 Mo. 589; Nivert v. Railway, 232 Mo. 639; Clark v. Railway, 242 Mo. 603; Chappell v. Rys. Co., 174 Mo. App. 135; Battles v. Railway, 178 Mo. App. 622; Maginnis v. Railway, 182 Mo. App. 713; Baker v. Railway, 187 Mo. App. 160; Grear v. Harvey, 195 Mo. App. 8, 182 S. W. 961; Israel v. Railway, 190 S. W. 1017. Merely to state in the petition that defendant was negligent in that "no reasonable lookout was maintained," without more, is merely to state a legal conclusion, and tenders no issue of fact. Zasemowich v. Am. Mfg. Co., 213 S. W. 802. (d) And in the use of the phrase: "in the exercise of ordinary care in the use of the bell to warn

him of his danger,'' the instruction is in conflict with instruction number 13, given for defendant. There is not a word of evidence from any source, that plaintiff was oblivious to the approach of the car. The evidence on that question is to the contrary. It was error to submit to the jury the question of negligence on the failure to ring the bell. Peterson v. Railway, 270 Mo. 75; Young v. Railway, 227 Mo. 307; Mockowik v. Railway, 196 Mo. 550; Hutchinson v. Railway, 195 Mo. 546; Murray v. Transit Co., 176 Mo. 183; Heintz v. Transit Co., 115 Mo. App. 670. (2) The court erred in refusing to give to the jury the demurrer asked by the defendant at the close of plaintiff's evidence, and erred in refusing to give the peremptory instruction in the nature of a demurrer, asked by the defendant at the close of all the evidence in the case. It was error for the court to submit this case to the jury, under the case made by the undisputed evidence produced by the plaintiff. The plaintiff wholly failed to prove the allegations of the petition. Mc-Miens v. Rys. Co., 274 Mo. 331; Keele v Railway, 258 Mo. 75, 78; Griffin v. Transfer Co., 193 S. W. 810; Rollinson v. Railway, 252 Mo. 541; Burge v. Railway, 244 Mo. 102; Degonia v. Railway, 224 Mo. 596; McGee v. Railway, 214 Mo. 543; Frisby v. Transit Co., 214 Mo. 567; Markowitz v. Railway, 186 Mo. 359; Draper v. Rys. Co., 199 Mo. App. 490; Schoenhard v. Dunham, 187 S. W. 274; Lewis v. Street Ry., 181 Mo. App. 426; Underwood v. Railroad, 182 Mo. App. 251, 274; Lackland v. United Rys. Co., 197 Mo. App. 62; Brewing Co. v. Dunham, 177 S. W. 1067; Kinney v. News Co., 193 Mo. App. 343, 344; Costello v. United Rys., 213 S. W. 180.

*Harry R. Freeman* and *T. J. Madden* for respondent.

(1) Appellant partially abandoned its theory at the close of evidence. It offered three instructions under the assumption that plaintiff was stealing a ride on the rear step, and nine instructions on the assumption that

plaintiff was struck by the front end of the car while crossing the track. It has entirely abandoned its trial theory here, and asks a reversal on the presumption that respondent's trial theory of fact was true. It should not be permitted to try its case on one theory and reverse it on another. (2) This case was a battle of facts. The positions of the parties were opposite and utterly irreconcilable. The two states of evidence could not both be true; nor could the difference be explained on any ground except that one was false. We go further than that, and assert it was not a case alone where individual witnesses committed perjury, but that perjury had been suborned, organized and arrayed by a guiding hand. The question is, which side was guilty? The jury said it was the defense, and we are willing for this court to also examine the facts, and judge. The Kansas City Court of Appeals reviewed and affirmed the case of the mother on the same kind of a record we have here, and adopted plaintiff's theory of fact. Pennington v. Kansas City Railways Co., 213 S. W. 137. Both cases rest upon the same facts, except that no question of jury bribery or witness subornation is presented for review in this court. (3) The record discloses very substantial reasons why appellant abandoned its defense. Many of the witnesses for defendant were gathered from pool halls, cabarets and other resorts. One of the boys who testified upon the first trial found his way into the McCune Home; another boy confessed that he had committed perjury and other witnesses for the defendant acknowledged the receipt of extravagant sums of money for testifying; one witness, a painter, residing in Kansas City, receiving $25 each time he appeared in court. The conductor came fresh from the farm to supply the missing link in the defense, connecting up the plaintiff's injury with the ride on the rear steps, but he had written a letter which tragically exposed the perjury. The extraordinary conduct of the motorman in refusing to attend court and give evidence as to his own conduct in this affair shows something startlingly unusual and strange, pointing inevitably

to his consciousness of guilt and fear of exposure. The conduct of defendant, as disclosed by the opinion of the Kansas City Court of Appeals in the mother's case, is sufficient to show that the defendant knew its defense was spurious. (4) The case presented by plaintiff's evidence convicts the motorman of the grossest negligence. Had the motorman been at his post, he would have seen these boys as they were directing their steps towards the brilliantly lighted pictures; he would have seen them while they were still on the west-bound track and when his car was crossing Brooklyn Avenue, 120 feet west of the point of the injury; he would have seen that these boys belonged to the same group, and that the boys in the rear were following the footsteps of the leader; he would have seen the first boy approach the track in a steady, ordinary gait, apparently unconscious of the car, and cross the track toward the curb; he would have seen the second boy follow the same course, having the same manner, and ordinary care should have dictated to him that the third boy would do likewise. Every human impulse demands under such circumstances that the motorman put his car under control and take every reasonable precaution to avert the catastrophe. Ellis v. Street Railway, 234 Mo. 676; Moore v. United Rys., 185 Mo. App. 184. (5) A mere tap of the bell would have attracted the boy's attention and he would have stopped before going on the track, or, after he was on the track, would have hastened his pace and he would have gotten out of the way. There was evidence that the boy had perfect hearing, had good eyesight and ordinary intelligence, prior to the time he was hurt, and hence the failure to sound the gong became a proximate cause of the injury. (6) In considering the demurrer we are not confined to the question of stopping the car. If the car could have been so reduced in speed as to have permitted the boy to cross in safety, then that would authorize a submission of the case to the jury on that ground. (7) The burden of appellant's contention is that the speed of the car at the time was such as to

make it impossible for the motorman to stop. Testimony fixed the speed at fifteen miles an hour, and it was for the jury to say under this evidence what the speed was. (8) There cannot be any claim under this assignment that the boys' conduct influenced the action of the motor man. Every word of evidence, and inference to be drawn therefrom, shows that the plaintiff was unconscious of impending peril. King v. Rys. Co., 204 S. W., 1130; Peterie v. St. Ry., 177 Mo. App. 372; Newton v. Harvey, 202 S. W. 251; Strother v. Dunham, 193 S. W. 882.

GOODE, J.—This plaintiff, some time in the evening, but after dark on January 14, 1914, was struck by an electric trolley car and badly hurt. When the accident occurred he was a lad fourteen or fifteen years old, was still a minor when this action was instituted with his mother as next friend, and also when it was tried at the March term of the Circuit Court of Jackson County. The plaintiff's skull was fractured by the impact of the street car, and on January 23, 1917, after the trial of the case, but before the motions for new trial and in arrest of judgment had been passed upon, he was found to be a person of unsound mind by the probate court of said county, and James A. Shannon was appointed by the court last named as guardian of his person and estate. Pursuant to a proper procedure for the purpose, said guardian, on November 28, 1917, was substituted by the circuit court as curator for the plaintiff in the present action in lieu of his mother as next friend, and an order was entered that the action be further prosecuted in the name of Clarence E. Pennington, by James A. Shannon, as guardian.

The causalty to plaintiff happened on Twelfth Street, in Kansas City, Missouri, a short distance east of its intersection with Brooklyn Avenue. Twelfth Street is a thoroughfare running east and west and Brooklyn Avenue one running north and south; and on both of them are two street-car tracks. A building in which, at the time of the accident, a moving picture exhibition was conducted, is located on the south side

of Twelfth Street about one hundred feet or more east of the east line of Brooklyn Avenue. On the evening in question a political meeting was to be held in the theatre building, at which the mayor of the city was to deliver an address, and for that reason and because a free exhibition of moving pictures would be given in connection with the speaking, there was a considerable group of persons standing about the sidewalk in front of the theatre. The two streets about the scene of the accident were brilliantly lighted by electric street lamps, and the lamps of the theatre and other places. Plaintiff, with his younger brother, a boy about ten years old, and, Floyd Wolff, about plaintiff's age, were on the north side of Twelfth Street, near the corner of Brooklyn Avenue, immediately before the accident, from whence, according to their statements and those of other witnesses, they started across Twelfth Street diagonally to the southeast in the direction of the theatre. They were moving one behind the other and about three feet apart, plaintiff being in the rear. A trolley car, No. 285, operated by Robert J. Dunham and Ford Harvey, Receivers of the Metropolitan Street Railway Company, running east, had stopped on the west side of Brooklyn Avenue to admit and discharge passengers. Having done so it resumed its movement eastwardly across Brooklyn Avenue, advancing at the rate of from fifteen to twenty miles an hour, and encountered plaintiff just as he was in the act of stepping over the south rail of the south or east-bound track. The fender of the car caught his legs, causing him to fall backward against the front of the car and then to fall into the street between the south rail of the track and the curb. While he lay in the street unconscious, probably three or four feet from the street-car track, his little brother went to him and lifted his head, a company of persons gathered about and two of them carried him into a drug store at one of the corners of the two streets, and there he received first surgical attention and was later taken to a hospital in an ambulance.

The negligence alleged in the petition was that the receivers and their agents in charge of the car, did not keep a reasonable lookout; and when, by the exercise of ordinary care they would have seen plaintiff in a position of danger, or going into a position of danger and unaware of the approach of the car, did not exercise ordinary care and skill in the use of the appliances to reduce speed or stop the car, or give warning by bell of its approach. The answer contained a general denial and a plea that the injury plaintiff received, if any, was the result of his own negligence directly contributing to it; and that plaintiff, by his own acts and conduct, assumed the risk of injury at the time and place mentioned in the petition. A reply in the form of a general denial was filed.

The appellant's abstract of the record says that the action was instituted against the aforementioned receivers and the appellant, the Kansas City Railways Company, but that on March 19, 1917, the day the trial was begun which led to this appeal, the petition was amended by striking out the names of the receivers, leaving said Railways Company the sole defendant; and it thereupon filed an answer setting up the aforesaid defenses. The respondent's additional abstract says that about six months before, and on October 23, 1916, in Division Two of the Jackson County Circuit Court, that substitution occurred, and sets out the following transcript of the entry of it in the records of said court:

"Now on this day come the parties hereto and by attorneys, this cause coming on for trial, by agreement of parties the Kansas City Railways Company is substituted as party defendant in this cause, and said cause is by the court dismissed against the defendants Robert J. Dunham and Ford F. Harvey, Receivers of the Metropolitan Street Railway Company. Thereupon the plaintiff is by the court given leave to amend his petition by substituting the Kansas City Railways Company as party defendant herein.

"The case now being dismissed as to the receivers, now comes the Kansas City Railways Company, and having by virtue of the orders and decrees of the United States District Court for the Western Division of the Western District of Missouri assumed the liability of the receivers, if any herein exists, and enters its appearance herein, waiving amendments of the petition to show such assumption, and adopts the pleadings heretofore filed herein by the receivers."

A motion was filed here to strike out the additional abstract for having been filed out of time, but that motion has been overruled.

Persons who qualified as experts regarding the time in which a car moving at a speed of fifteen to twenty miles an hour could be stopped, gave testimony to show the car in question could have been stopped, after it started across Brooklyn Avenue, before it reached the point where it hit plaintiff. There was testimony on the part of defendant tending to the contrary conclusion. In truth, the record is exceptional throughout in the remarkable conflict of the statements of the witnesses upon all the issues involved.

The case was tried for plaintiff upon the supposition that he was, as said before, hit by the fender of the car just as he was passing over the second rail of the track on which the car was moving; that he had moved into that position of peril, unconscious of the car's approach, and no warning was sounded by the motorman, or any effort made to stop or slacken the speed of the car; and a dozen or more witnesses gave testimony to prove those were the facts; further, that the motorman was not looking ahead at the time, but had opened the door on the north side of the vestibule to order two boys, who were riding on the north front steps, to get off, and while he was doing this, instead of stopping the car or slackening its speed, he permitted it to run along at the speed it was under when he turned to the north door. The narratives of the witnesses also embraced statements that the boy lay just south of the south rail

when he fell; that blood flowed from his head and formed a pool in the street at that point.

The case as shown by the evidence for defendant presents an entirely different aspect. The substance of that evidence is as follows: Plaintiff and another boy climbed onto the front steps of the north side of the car, while it was stationary on Brooklyn Avenue, or just as it left that stop; after crossing Brooklyn Avenue, the motorman, after stopping the car, as some of the witnesses said, or perhaps while it was still moving, opened the north door of the front vestibule and made the boys get off the steps; they immediately ran to the rear of the car and plaintiff got on the step at the rear on the north side of the car and where the vestibule was closed, while the other boy took hold of the rear fender, which was up, and was running along behind the car; that while the boys were in this position, a west-bound car came along on the north track, struck the plaintiff, knocked him from the step and left him lying in the space between the north and south tracks, where a pool of blood formed A dozen or more witnesses gave testimony tending to show the accident happened in that way; and in two instructions asked by defendant and given, the court advised the jury that if it did, the plaintiff could not recover and the verdict should be for the defendant. Defendant also relies on the facts that plaintiff, of necessity would have seen and hard the approaching car, had he looked and listened before he walked on the track; that his statement that he looked but did not see it, is contradicted by the physical facts and by the testimony of witnesses that he looked west when the car was a short distance to the west and plainly visible; but nevertheless plaintiff continued to go ahead and onto the track.

The inconsistencies in the testimony may, in some measure, be reconciled by supposing that two other boys, not connected with the group plaintiff was in, were riding on the steps in the manner stated, and were warned off the front steps by the motorman at the instant the car struck plaintiff as he was crossing the

street. Some of the evidence supports this view. The discrepancies between the witnesses as to where the plaintiff was lying and where the blood was found in the street after the accident, may have arisen from these circumstances: two bystanders lifted plaintiff, so one of them testified, from the place where he fell south of the south rail of the east-bound track, and started with him to a drug store on the northwest corner of Brooklyn Avenue and Twelfth Street; they were halted for a moment or two in their progress by the west-bound car coming between them and the drug store and, it seems, plaintiff's feet during that hesitation, rested on the ground. Blood was flowing from his head all the time, and it is possible the witnesses who testified he was left lying between the tracks, saw him first at that time. It cannot be said the different versions of the accident can be reconciled completely on those suppositions; but they help to reconcile them.

Other portions of the evidence will be related, if necessary, in discussing the points presented for decision on the appeal.

The jury returned a verdict in plaintiff's favor for $22,500. The court required five thousand dollars to be remitted as the condition on which the motions for new trial and in arrest of judgment would be overruled, and this having been done, judgment was entered for plaintiff for $17,500, from which judgment defendant appealed.

Three instructions were given at the request of plaintiff, and error is assigned in respect of them. Of the instructions requested by defendant, seven were given in the form they were requested, four after the court had made slight changes in them, and three were refused. Errors are assigned for the refusal of the four as asked, and without modifying them, and for the refusal of the three.

We reproduce an instruction granted for the defendant, and as asked, except that the word "apparently"

was inserted in two places before the words "unaware of such danger," where those words occur:

"The burden is on the plaintiff in this case, to prove by the greater weight of all the credible evidence in the case, that at the time and place in controversy, he was on the east-bound track in front of the east-bound car, in a position of danger in front of said car; and further, that the motorman of said east-bound car ran said car into and struck and injured him after he, the said motorman, by the exercise of ordinary care could have seen that plaintiff was in such position of danger and *apparently* unaware of such danger, and that after said motorman, by the exercise of such care, could have so seen the plaintiff in such position of danger, and *apparently* unaware of such danger, the motorman could, by the exercise of ordinary care, have avoided injury to plaintiff. If the plaintiff has not proven all those facts by the greater weight of all the credible evidence in the case, to the satisfaction of the jury, or if the evidence on those facts as to its weight, is evenly balanced in favor of the plaintiff and defendant, then in either of such events the findings and verdict of the jury must be for the defendant, regardless of any other question in the case." (Italics ours).

The counterpart of that instruction, setting out the condition of a verdict for plaintiff from the positive instead of the negative standpoint, was given for plaintiff, and in it the terms "negligence" and "ordinary care" were defined. Said instruction was the only one given at plaintiff's request, except two formal ones relating to the credibility of witnesses and the burden of proof.

I. The assignment of error that should be disposed of first, is the refusal of the court below to direct a verdict for defendant. It is presented in two phases: one that no evidence was introduced to prove the present defendant is answerable in damages to the plaintiff, even if his injury was due to a tort; the other that no conclusion is possible from the facts in proof than

that plaintiff's own negligence caused, or contributed to cause, his injury.

The consent entered of record and which we have recited above, for the substitution of the Kansas City Railways Company as defendant, was not put in evidence at the trial. The entry wherein that consent is set forth contains other matters; namely, a recital that, pursuant to the decree of a Federal court, the Railways Company had assumed the liability of the receivers, if there was any; contained also, an entry of appearance of the Railways Company; a waiver by it of an amendment to plaintiff's petition to show the company was liable if the receivers were, and an adoption of the prior pleadings against the receivers, as sufficient to state a case against the Railways Company. This stipulation was an admission of record by defendant that it stood in the shoes of the receivers as regards liability to plaintiff, and the case was tried on that theory. The purpose of the admission of record was to relieve plaintiff of the task of pleading and proving the fact. A fact essential to a cause of action or defense need not be proved if the adverse party admits it. [State to use Levy v. Adler, 97 Mo. 413; First Nat. Bank v. Ragsdale, 158 Mo. 668.]

**Subtituted Defendant: Consent.**

It is equally clear that when a party enters on the record its admission of a fact, to dispense with the necessity of pleading it, it need not be proved; for what need not be averred to state a cause of action, need not be proved to establish it. So where a fact appears of record, it is unnecessary to prove it; for the court will take notice of it. [State v. Daugherty, 106 Mo. 182, 187.]

It is insisted for defendant that this admission of record was made in another division of the court and preliminary to a former trial. That there was a previous trial the record fails to show clearly; but the fact is immaterial. The record containing the admission was a portion of the record in the case and binding on

the defendant in any division of the court to which it might be transferred.

It appears an amended petition was filed wherein the assumption by defendant of all the liabilities of the receivers was alleged; but the allegation was unnecessary, because of the stipulation to waive an amendment of that character, and treat the original petition as sufficient.

II. Turning to the second phase of the proposition, that a verdict for defendant should have been ordered because of the facts of the accident, we observe, as pertinent to the point, that the main instruction for plaintiff allowed him to recover only on a finding that the motorman, by using ordinary care, could have prevented the car from striking him; or, to state the matter more in detail, no recovery was permitted unless the jury found the following facts: that the motorman either saw, or, if duly careful, would have seen, the plaintiff walk on the track where he was in danger from the advance of the car; that in doing so plaintiff was unconscious of the danger to which he was exposing himself; that, by using with ordinary care the means available, the motorman could have warned plaintiff of his danger, or could have reduced the speed of the car, or have stopped it, before it reached the plaintiff. The brief for defendant concedes there was evidence to prove those facts in support of plaintiff's case; evidence to prove the motorman was at the north door of the vestibule and not looking ahead; that plaintiff and his two companions walked from the north sidewalk of Twelfth Street into the roadway and toward the picture show, the plaintiff being in the rear; that the first and second boys both cleared the tracks in safety and the plaintiff came near doing so, but was hit as he was stepping over the southernmost rail; that he was unaware of the approaching car, the speed of which was not reduced after it left the west side of Brooklyn Avenue. Those conceded facts restrict the basis of the

*Contributory Negligence.*

284 Mo.—2

contention that plaintiff should have been denied a recovery to the proposition that, even if the motorman was negligent in not watching ahead, or in sounding no warning of the approach of the car, or in failing to slow down or stop, nevertheless plaintiff went on the track in front of the approaching car when it was so near that there was no time to stop or check it before it reached plaintiff, even if all the precautions charged to have been neglected had been taken. Otherwise expressed, the argument is that the carelessness of plantiff in going into peril was concurrent with the motorman's negligent ommissions of precautions and left no chance to avoid a collision with the plaintiff after he had walked on the track. This theory of the case is opposed to the positive testimony of some witnesses, and to an inference deducible from the principal facts of the occurence, if we lay aside the evidence tending to prove plaintiff was swept off the north rear steps of the east-bound car by one bound west; a contingency which, under the instructions, precluded a verdict for plaintiff. Stated in the terms most favorable to defendant, witnesses said the car was from fifty to sixty feet distant from plaintiff when he stepped over the *north* rail of the track on which the car was approaching. Expert testimony was given that it could have been stopped within forty or forty-five feet, if its speed was fifteen or twenty miles an hour, as the testimony inclined to prove. The plaintiff was struck as he was stepping over the south rail. Hence it is plain the question was for the jury as to whether there was a chance to save him by stopping the car or checking its movement and whether the proximate cause of his hurt was the omission of the motorman to do what he could, within the limits of ordinary care, to stop or slow down.

Other and more influential facts stand in the way of a ruling for defendant on the point in hand. The distance from the place of the collision to the west side of Brooklyn Avenue was about one hundred and seventy-nine feet; and from the east side, where the motorman

diverted his gaze and opened the north door of the vestibule, to the point of collision nearly opposite the picture show, was one hundred and nineteen feet. The boys advanced slowly across the street in single file, three feet apart, walking slightly toward the southeast, the plaintiff behind. Considering these facts, it is plain there was room for the jury to conclude that if the motorman had kept his attention fixed on the track after he crossed Brooklyn Avenue, instead of allowing it to be diverted, he would have seen the file of boys in time to avert the accident, either by arousing them to their danger by sounding a warning, or by checking or stopping the car; to conclude, also, that if it was necessary to open the north door to chase away trespassing boys, the motorman should have stopped the car while doing so, instead of allowing it to proceed under full headway. The plaintiff was within a step of safety when he was struck; and that it was impossible for the motorman, by ordinary care in the way of vigilance or of an effort to stop the car, to prevent the collision, is not the only inference warranted by the evidence. A precedent standing upon facts exactly like those in the case at bar is not at hand, nor is it worth while to hunt one; for the pertinent legal doctrine and the principle and limits of it, have been expounded in many opinions, of which we cite as apposite: Pennington v. K. C. Rys., 213 S. W. 137; Ellis v. St. Ry. Co., 234 Mo. 657; and Moore v. United Railways Co., 185 Mo. App. 184.

Minor criticisms are suggested of the principal instruction given for plaintiff, of which one is that it assumed the occurrence of incidents about which the testimony was discordant; namely, that plaintiff did not look to learn if a car was coming before he went on the track; that he was unaware of the car's approach, and that if the motorman had made use of the means at hand, he would have avoided striking plaintiff. The instruction required the jury to find those were among the facts of the occurrence instead of

**Instruction.**

assuming they were; and so did the instruction defendant requested, which we have transcribed.

Another point is made as to the use of the word "should" in the place of "could" or "would," in the part of the instruction for plaintiff where the question was submitted of whether the motorman "in the exercise of ordinary care, *should* have seen and realized the plaintiff was unaware of the approach of said car," etc. "Should" was an inapt word where used; but it had no misleading tendency. Especially was this so, as the court in the instruction supra, given substantially as defendant requested it, required the jury, as one condition of a verdict for plaintiff, to find "the said motorman, by the exercise of ordinary care, *could* have seen that plaintiff was in such a position of danger and unaware of such danger."

Every ruling on the requested instructions is assigned for error, and each of the assignments has been studied, with the result that we deem them all untenable. The instructions are too numerous for us to take up space in reproducing them or in an elaborate discussion of the various objections raised by defendant. It suffices to say that in our opinion the case was presented to the jury in a manner to inform them clearly and correctly of the rules of law they were to observe in coming to a verdict. The conditions on which plaintiff could recover were stated accurately in a charge requested by him and in the one asked by defendant, and copied above. As already said, a recovery was excluded by two charges, if the jury found plaintiff was hit by a west-bound car while on the steps of the one bound east, as defendant contended was the case. In three charges presenting the defense in as many aspects, the jury were advised that if the plaintiff went from a place of safety on the track when the car was so close that it could not. be prevented from striking him, the verdict must be for the defendant. They were advised, too, that neglect of the motorman to signal was immaterial if plaintiff saw the car approaching. The value of the testimony

was explained to the jury by instructing them that if the physical facts or common experience conflicted with the statements of a witness, or if a witness had sworn falsely to a material fact, such testimony might be ignor-ed. Two of the refused instructions related to matters sufficiently covered by those given, and the modifications made in two or three of plaintiff's requests were proper to either clarify or define more accurately, the rule of law declared.

III. The additional abstract of the record was filed fewer than fifteen days before the appeal was set for a hearing in Division One, and therein the filing of it was not a compliance with Rule 11 of this court. It was filed before joinder in error upon the abstract filed by defendant and therefore does not come within the provision of Rule 4, that no suggestion of a diminution of the record in civil cases will be entertained after joinder in error except by consent of the parties. [Everett v. Butler, 192 Mo. 564, 566.]

Additional Abstract.

The defendant in suggestions in support of its motion to strike out the additional abstract, neither shows nor even says that to consider it will work any surprise or in any way be to its disadvantage in the presentation of its appeal, and it is apparent that it will not be.

If it be conceded that plaintiff's counsel was negli-gent and remiss in not filing the additional abstract within the period prescribed by the rule, nevertheless this circumstance ought not to be held to prevent the court from treating said abstract as part of the record on the appeal, when to do so will not tend to prejudice the defendant and will prevent a reversal of the judg-ment for a default which does not affect the merits. Even in enforcing the general doctrine of the law, that a party will not be relieved against the consequences of his own negligence, an exception is made where the negligent act did no harm to the other party, while not to relieve against it would materially harm the negligent

party. Says a text-writer of authority: "Even clearly established negligence may not of itself be sufficient ground for refusing relief if it appears the other party has not been prejudiced thereby." [2 Pomeroy, Eq. Jur. (4 Ed) sec. 856 and cases cited in note g, p. 1751; Troll v. Sauerbrun, 114 Mo. App. 323, 327.] It is contrary to several sections of our Code of Practice, and to the spirit of it, to reverse a judgment for a harmless technical default. We quote two sections of the statutes:

"The Supreme Court, or courts of appeals shall not reverse the judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error, and materially affecting the merits of the action." [R. S. 1909, sec. 2082.]

"The court shall, in every stage of the action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed by reason of such error or defect." [R. S. 1909, sec. 1850.]

Defaults in omitting to comply with statutory rules of practice as to the time of filing answers or taking other proceedings, are not always fatal, nor intended to be, as the cited sections show. So if we accord to court rules of practice the force of a statute, it is not necessary to hold exceptions can never be allowed, no matter what the circumstances. A rule of court prescribing the time for filing an additional abstract, should not be adhered to so rigidly as to stand in the way of the court relaxing it in the interest of justice, when to do so will injure neither of the litigant parties. In such a case the question is for the court and relates to whether to make an exception to the rule will unduly obstruct the orderly dispatch of the judicial business of the court.

In discussing the enforcement of rules of appellate procedure, the Supreme Court of Texas, said:

"A failure to observe and comply with the rules prescribed by this court regulating the manner of bringing cases before it, is a valid and sufficient ground, in the discretion of the court, for the dismissal of an ap-

peal or writ of error, unless good cause is shown why this is not done. It is not to be inferred, however, that the court must in all cases sustain motions to dismiss upon a mere failure to comply with the strict letter of this rule; but the court, in acting on such motion, may unquestionably 'give such direction to the case as will cause the least inconvenience or damage from such failure, as far as practicable.' Sup. Ct. R. 39; Dist. Ct. R. 100." [Shanks v. Carroll, 50 Texas, l. c. 18.]

A text-work, after referring to a disagreement in the decisions regarding the suspension of court rules in particular cases, says:

"The general principles to be derived from these conflicting decisions seem to be that rules which are merely directory, or which are prescribed solely for the governance of attorneys and the convenience of the court, may be dispensed with when the ends of justice so require, but that this power of dispensing with rules must never be exercised in an arbitrary manner in cases where it will operate to the prejudice of the parties, or tend to unsettle the established practice of the court." [18 Ency. Pl. & Pr. p. 1267.]

We find no prejudicial error in the record, so the judgment must be affirmed.

*Walker, C. J., Williams* and *Williamson, JJ.*, concur; *Blair, J.*, concurs in separate opinion; *Graves, J.*, dissents in separate opinion; *Woodson, J.*, absent.


BLAIR, J. (concurring).—In this case error was assigned because the trial court refused "to give to the jury the defendant's demurrer offered and asked by defendant at the close of the evidence offered by plaintiff," and because the court refused a like instruction at the close of all the evidence.

This assignment is repeated under Point "III" in appellant's brief, and the following is added: "It was error for the court to submit this case to the jury, under the case made by the undisputed evidence produced by plaintiff. The plaintiff wholly failed to prove the al-

legations of the petition.'' In support of this proposition seventeen decisions of this court and the courts of appeal are cited.

On this Point ''III'' appellant printed an argument of twenty pages in which it insists the demurrer should have been sustained on ''the evidence which was put in by plaintiff and not denied by defendant.'' In this argument it is emphatically stated that ''we are now considering this case under the evidence in the case as made by plaintiff himself; and upon this rock we found our contention.'' The argument deals only with the evidence concerning the circumstances of the injury and is directed solely to a discussion of those circumstances. In it are quoted excerpts from ten of the decisions cited under ''III'' of the Points and Authorities. These quotations have no relevancy to the question whether appellant's abstract shows the Railways Company assumed the liabilities of the receivers. The matter was not controverted at the trial. Among the seventeen decisions cited under ''III,'' in a very modest position indeed, near the last, are two decisions now said to bear upon the failure of the evidence in the abstract to show the substitution of the Railways Company for the receivers. The first appearence of this contention, in the open, was in the oral argument in this court.

Rule 13 of this court requires abstracts to ''set forth so much of the record as is necessary to a complete understanding of all the questions presented for decision.'' When this abstract and brief were served upon respondent's counsel it is clear they were not fairly open to the construction that appellant was standing upon one rock and intending to wreck respondent's craft upon another so carefully submerged by words as was this one, first brought to the surface in the oral argument. In the circumstances respondent had the right to assume that the argument made under Point III disclosed appellant's whole position thereunder. He was under no obligation to bring here parts of the record which were not

relevant to any question appellant presented. I am of the opinion that appellant should not be permitted to secure a reversal of this judgment on this point, whether or not the additional abstract is permitted to be filed. He is in no position to raise the question now brought forward. I concur.

GRAVES, J. (dissenting).—I express no opinion upon the merits of this case. The additional abstract of the record (if it made out a sufficient record when read in connection with the appellant's abstract) was not filed in time. What my learned brother has written herein wipes out our rules and starts the court out upon billowy waves without chart or compass, save and except an equitable ruling upon each default under the rules. If the ruling here announced is to be our guidance for the future (in lieu of our fixed rules) we will spend half our time adjusting defaults and failures.

If failure to file additional abstracts must be condoned because no harm results, then failure to file abstracts must likewise be condoned, and equitably adjusted. To this deviation from fixed rules I shall never consent.

What we have said above is in view of the fact that no reasonable excuse has been offered for the failure to file this additional abstract in time. Upon proper showing we can and will give additional time for filing both abstracts and additional abstracts, but the showing is absent in this case. I therefore dissent to that portion of the opinion, and the result reached.