Appellees the Chicago and Western Indiana Railroad Company and the Wabash Railway Company filed their petition with the Illinois Commerce Commission for an order granting them permission to sell and convey to appellee Harry P. Munns for $340,000 to be paid to the former company and $110,000 to be paid to the latter company, a piece of real estate located along their right of way at Sixty-third street, in Chicago, and separated from the right of way by a public street. In August, 1926, the evidence was heard on behalf of appellees and the cause was continued *Page 118 
for about thirty days, when appellant, Harry M. Englestein, was granted leave to file an intervening petition, in which he alleged that he had an interest in the property by reason of a contract entered into by the Wabash Railway Company for the sale of the property to him for $180,000, which contract was made February 1, 1923; that by reason of the contract and the rights of appellant the consent to the sale to Munns should be withheld. The petition alleged that appellant had negotiated with the Wabash Railway Company for a long time with reference to the controversy between them growing out of the contract, and that he was ready and willing to pay for the property $180,000, which was its appraised value. Evidence was heard upon the intervening petition, and an order was entered which found that because of the relationship between the Wabash Railway Company and appellant prior to the agreement with Munns, together with the matter of $110,000 which the Wabash Railway Company was to receive from Munns for the relinquishment of its leasehold interests, the case was so unusual that the approval of the original petition was of very doubtful advantage either to the public in general or to the railroads themselves because of costly litigation inevitably involved and the doubtful ability of the railroads to convey title to Munns, and the prayer of the original petition was denied. The two railroad companies and Munns appealed to the superior court of Cook county, and on July 6, 1927, the order of the Commerce Commission was reversed and the cause remanded for such further proceedings as law and justice might require. On July 20, 1927, the Commerce Commission entered an order dismissing the intervening petition and granting the prayer of the original petition. On July 26, 1927, appellant prosecuted an appeal to this court from the judgment of the superior court.
There is no substantial conflict as to the facts, which are as follows: The Chicago and Western Indiana Railroad *Page 119 
Company leased terminal facilities in Chicago to various railroad companies, including the Wabash Railway Company. It also leased, for the exclusive use of its respective tenants, certain properties adjacent to its right of way. In 1907 the Wabash Railroad Company, the predecessor of the petitioner the Wabash Railway Company, requested the Chicago and Western Indiana Railroad Company to acquire for its exclusive use the property described in the petition, to be used by the Wabash Railway Company for team tracks and for other railroad purposes. The Chicago and Western Indiana Railroad Company acquired this property and paid for it with the proceeds of its bonds, amounting to $224,000, secured by a mortgage called the consolidated mortgage, in which the Illinois Trust and Savings Bank was trustee. The Chicago and Western Indiana Railroad Company entered into a lease with the Wabash Railway Company whereby the latter was given the exclusive use of the property for 971 years. The lessee, as a part of its rental, was to pay the entire amount of bonds at their maturity in 1952, together with all of the carrying charges, the same as if it absolutely owned the property. The property was never used for railroad purposes by either company, and by reason of changed conditions and a zoning ordinance passed by the city of Chicago it became impossible to use it for the purposes for which it was purchased. Because of these facts it was determined by both companies that the property should be sold. Another mortgage of the Chicago and Western Indiana Railroad Company, executed after the consolidated mortgage and after the lease to the Wabash Railway Company, in which the Bankers Trust Company of New York was trustee, required that no less than the fair cash market value or the appraised value of the property should be deposited with the trustee in the event of the sale of any property covered by the encumbrance. *Page 120 
Munns began negotiating for the purchase of the property and an oral agreement was made by him to buy it. In order to meet the requirements of the mortgages the railroad companies asked him to pay $340,000 to the trustee of the consolidated mortgage, that sum being considered to be the fair cash market value of the property at the time of the hearing. The Chicago and Western Indiana Railroad Company was interested in having a sufficient amount deposited with the trustee to pay the $224,000 of bonds which were to be paid by the Wabash Railway Company under its lease, and in addition thereto a further sum of $116,000, making a total of $340,000, which was the then appraised value of the property. The amount in excess of $224,000 was to be retained by the trustee to retire other bonds of the Chicago and Western Indiana Railroad Company or was to be put back into the property of that company. In addition to the $340,000 the Wabash Railway Company was to receive for its lease $110,000, which was over and above the fair cash market value.
In 1917 and 1918 the property was placed in the hands of Walter Mills, a real estate broker in Chicago, for the purpose of collecting the rents. Mills told J.E. Taussig, the president of the Wabash Railway Company, that the property should be sold, and Taussig finally agreed with him. In May, 1922, Mills started negotiations with appellant. On January 29, 1923, Mills sent a telegram to Taussig asking him how he would consider an offer of $170,000 for the property. Taussig replied next day by two letters. The first, in effect, authorized Mills to sell the property for $170,000 but urged him to endeavor to obtain a greater price. He advised Mills that another letter was being written, in which Taussig insisted that $180,000 was the least which would be taken. The second letter stated that $180,000 was the minimum for the property, which left a deficit for carrying charges and original costs. Mills communicated to appellant the contents of the last letter and appellant *Page 121 
made an offer of $180,000. A contract was drawn in which appellant agreed to purchase the property for that amount, which contract was signed by him on January 31, 1923, and he deposited $5000 with Mills as earnest money. This contract was sent by Mills to Taussig. On the same day Mills sent a telegram to Taussig notifying him that he had sold the property for $180,000, that he had $5000 to bind the bargain, and the contract would be sent the next day for Taussig to execute. On February 3, 1923, Taussig wrote to Mills in which he congratulated him on the manner in which he had handled the matter. He stated that as soon as the contract was received he would execute it and return it promptly; that meanwhile he would commence negotiations with the Western Indiana in line with prior conversations and correspondence.
On March 17, 1923, Mills sent two letters to Taussig. The first stated that appellant and his attorney, Lawton, represented a syndicate of sixteen men, and Lawton was anxious to make a contract or any agreement in writing so they could hold the other members of the syndicate quiet. The letter stated that Mills did not want Taussig and Lawton to get together until Mills had a conference with Taussig; that now was the time to sell, and Mills did not want Taussig to tie up definitely with appellant until Mills was able to exhaust all possible chances with larger buyers who had become interested; that he did not want to throw appellant down or alarm him by the slightest inference that there were to be other purchasers. The letter asked for an appointment between the parties. The other letter, sent on the same day, informed Taussig that appellant and Lawton were extremely anxious to secure something in writing as to the purchase of the property, and a conference was urged at which the general counsel would be present. Mills sent a copy of the second letter to Lawton but did not send a copy of the first. On March 26, 1923, Mills, appellant, Lawton, Taussig and N.S. Brown, the vice-president *Page 122 
and general counsel of the Wabash Railway Company, had a meeting. Taussig is alleged to have stated that the contract signed by appellant had been received; that it was perfectly agreeable to the company; that the company was proceeding to carry out the contract; that the title to the property was not in the company but was in the Western Indiana; that the Wabash was the equitable owner by reason of the manner in which it had been purchased; that the Wabash was entitled to a conveyance at any time upon satisfying the requirements of the consolidated mortgage; that all of the other tenants of the Western Indiana had taken the necessary steps to secure releases from the mortgages; that the details of the transaction were in the hands of Brown, the general counsel. Brown is alleged to have stated that in order to get a release from the consolidated mortgage the Wabash had to buy in some four per cent bonds, which had already been done in an advantageous market, and that everything was in shape for a transfer of the property to the purchaser except the releases of mortgages. In May, 1923, at another meeting of the parties, Brown is alleged to have said that everything was going along all right and it was entirely a matter of getting releases of the mortgages; that just as soon as they were secured a transfer would be made to appellant. In June, 1923, at another meeting, Taussig stated that appellant and Lawton were bothering him unnecessarily; that appellant had made an offer of $180,000; that since that time other offers had been received varying from $200,000 to $235,000; that if appellant had any further offers to make he could submit them to Mills. Lawton replied that they had no offer to submit; that they had a contract, and he called attention to the various telegrams and correspondence. Taussig stated that there might be something in Lawton's claim and for them to take the matter up with Brown and whatever he did would be all right. On July 25, 1923, the contract signed by appellant, *Page 123 
together with his check for $5000, was returned to appellant.
It was stipulated that appellant had never abandoned his claim to the property but had always claimed he had a contract for the purchase of the property, which claim was denied by the Wabash Railway Company; that the negotiations had been more or less continuous down to date; that on or about August 15, 1926, Charlton Alexander, an attorney, called upon Brown on behalf of appellant; that he requested Brown to state what the Wabash desired of appellant in order to settle the matter in controversy; that Brown stated that there was no use talking about the property any further — that the Bankers Trust Company had definitely refused to release the property from the trust deed; that the property was off of the market and would not be sold; that the Wabash had dropped the entire matter.
Lawton testified that at various times during the negotiations with Brown, and especially in May, 1924, Brown stated that the reason the Wabash Railway Company could not proceed was that the terms of the release which was to be secured from the Bankers Trust Company were so difficult that nothing could be done with reference to the sale; that the hands of the company were entirely tied. Lawton further testified that he went to New York and saw the officers of the Bankers Trust Company; that he then saw Brown and made various suggestions as to how a release could be obtained. In August, 1925, he called on Brown, who said there was no use in having any other conferences because he was unable to get any action on the release from the Bankers Trust Company; that Brown was going to forget about the matter and have nothing further to do with it; that the property was not going to be sold; that the next day Lawton saw C.G. Austin, an attorney who was interested in the matter, who stated that he was ready and willing to take up negotiations with the Bankers Trust Company whenever the Wabash Railway Company notified him to do *Page 124 
so or desired to make a sale and wanted a release; that if there was any reason for the property not being transferred it was due entirely to the Wabash Railway Company and not to the attorney.
It is insisted by appellant that there was substantial evidence to warrant the order of the Commerce Commission and it should be affirmed. It is insisted by appellees that the only question before the commission was whether or not it was for the best interest of the two railroad companies that the property be sold to Munns at the price stated in the petition; that the question was one of sound business judgment under all of the circumstances in evidence; that there was no substantial evidence to warrant the order of the commission refusing the prayer of the petition, and the judgment of the superior court should be affirmed.
Section 27 of the Public Utilities act provides, in substance, that unless the consent and approval of the commission is first obtained no public utility may assign, transfer, lease, mortgage, sell or otherwise dispose of or encumber the whole or any part of its franchise, licenses, permits, plant, equipment, business or other property; that every such assignment, transfer, lease, mortgage and sale of the whole or any part of any such property, and every contract, purchase of stock or other transaction made otherwise than in accordance with an order of the commission authorizing the same, shall be void.
The refusal of the Commerce Commission to grant the prayer of the original petition was based upon the alleged contract between appellant and the Wabash Railway Company, together with the question of the $110,000 which the Wabash Railway Company was to receive for its lease. If there was no contract with appellant he had no right to intervene and object to the sale to Munns. The statute expressly provides that such a contract is void unless it is authorized by the Commerce Commission. The contract with appellant was not so authorized. InGibbs v. Baltimore *Page 125 Gas Co. 130 U.S. 396, the contract was void by reason of statutory provisions. The court said: "There can be no civil rights where there can be no legal remedy, and there can be no legal remedy for that which is itself illegal. * * * It is clear that contracts in direct violation of statutes expressly forbidding their execution cannot be enforced. The rule of law is of universal operation that the aid of a court of justice shall not aid one in obtaining the fruits of an unlawful bargain." The contract of appellant was void and he had no legal remedy based upon it. In his intervening petition he did not ask the Commerce Commission to approve his contract but merely sought to prevent the approval of the contract with Munns. The legal title to the property was in the Chicago and Western Indiana Railroad Company. There is no claim that appellant had a contract of sale with this company or that there had ever been any negotiations with it which could be made the basis of an action for specific performance. It is contended that while the legal title was in that company the title was in fact held for the benefit of the Wabash Railway Company, which was the equitable owner. The evidence shows, however, that the property was purchased with the bonds of the Chicago and Western Indiana Railroad Company, they were outstanding and unpaid, and that company held the title as security for their payment. It did not merely hold the title for the equitable owner, and it therefore had a right to be heard in the sale of the property. The equitable owner did not have the right, without the consent of the holder of the legal title, to sell the property free from the bonds for $64,000 less than the amount of the bonds. All of these facts were known to appellant when he signed the contract. Under all of the evidence he was in no position to object to the approval by the Commerce Commission of the sale to Munns.
In People v. Pullman Car Co. 175 Ill. 125, it was held that a railroad company was prohibited from owning or *Page 126 
acquiring title to lands not necessary or available for corporate purposes. This land had never been used for railroad purposes and the evidence shows it could not be so used. Interest had been paid on the bonds at five per cent for about twenty years, together with taxes and other carrying charges. There had been no income from the property except rentals for sign-boards and other slight incomes. Evidence was offered that its fair value was $340,000, which Munns agreed to pay. He also agreed to pay $110,000 for the lease to the Wabash Railway Company. There was no substantial evidence to justify denying the prayer of the original petition.
The judgment of the superior court reversing the order was correct, and it will be affirmed.