Oscar F. Webster, Susie Webster, and Hazel Mounts, Trustees of the Southwest Missouri Water Works Company, a Dissolved Corporation, Appellants, v. The Joplin Water Works Company, a Corporation.—No. 38370.—177 S. W. (2d) 447.

Division Two, January 3, 1944.

Rehearing Denied and Motion to Transfer to Banc Overruled, February 7, 1944.

328

*Samuel L. Trusty, Louis N. Wolf* and *J. Carroll Combs* for appellants.

*Gertrude W. Willams, Roy Coyne, Cowgill Blair, Jr., John W. Scott* and *Haywood Scott* for respondent.

332

BOHLING, C.—This is an action to recover actual and punitive damages (said to be $35,000 and $50,000, respectively) for the allegedly wrongful and malicious destruction of the water works utility property and appropriation of the customers and the business of the Southwest Missouri Water Works Company, a corporation, by the defendant, Joplin Water Works Company, a corporation. (We continue the original designation of the litigants.) Oscar F. Webster, Susie Webster, and Hazel Mounts instituted the action as trustees for and on behalf of plaintiff corporation, a dissolved corporation. See Sec. 5036, R. S. 1939. After a jury had been empaneled, opening statements made, and the first witness on behalf of plaintiffs had been sworn, defendant objected to the introduction of any evidence on the ground the petition failed to state a cause of action. This was sustained. Plaintiffs appealed. Subsequent to the sub-

mission here a stipulation on behalf of the litigants was allowed. This stipulation brings to this court the occurrences before the court nisi at the time the objection was sustained "as a part of the record proper for all purposes on this appeal." Callier v. Chester, P. & Ste. G. Ry. Co., 158 Mo. App. 249, 256, 138 S. W. 660, 661; Pennington v. Kansas City Rys. Co., 284 Mo. 1, 17(I), 223 S. W. 428, 431[4]. We, consequently, seek the heart of the controversy of this review; i. e., whether the action may be maintained when instituted by said statutory trustees on behalf of the Southwest Missouri Water Works Company. Crowley v. Sutton (Mo.), 209 S. W. 902, 903[2]; St. Louis v. Senter Comm. Co., 340 Mo. 633, 646, 102 S. W. 2d 103, 110[5]; Presley v. Central Terminal Co. (Mo. App.), 142 S. W. 2d 799, 801[2, 3]. It is defendant's contention that the petition attempted to state a cause of action in plaintiffs as statutory trustees succeeding to the rights of the Southwest Missouri Water Works Company aforesaid and the allegations in said petition established that the cause of action, if any, never accrued to or vested in said corporation. The contention involves the issue that an attempted transfer by Webster of the water utility to said corporation was void as to third parties under our Public Service Commission act (Secs. 5651, 5654(2), R. S. 1939). The substance of the petition, with pleaded historical facts leading up to the alleged cause of action and defense narrated, follows:

Plaintiffs' petition alleged that plaintiffs *since April, 1936,* have been the trustees of the Southwest Missouri Water Works Company; "that, until the acts of the defendant hereinafter mentioned, said Southwest Missouri Water Works Company was a public· utility engaged in the distribution and selling of water and water service" in named subdivisions in Joplin, Missouri; that said Southwest Missouri Water Works Company purchased in 1935 said water utility property, franchise, etc., of Oscar F. Webster, who theretofore operated said public utility property. It is alleged that between December, 1935, and April, 1936, defendant committed various and sundry tortious acts to the destruction of said water utility property, its franchises and business. The Southwest Missouri Water Works Company received its charter May 3, 1935. Quoting: "After said property was destroyed by the defendant and after it ceased to be in use as utility property and after the claim arose against defendant for damages" as aforesaid "and after the dissolution of said corporation and while" O. F. Webster "was the president and chief stockholder of said dissolved corporation and one of its trustees, the said Webster personally arranged for and authorized the institution of the action against the defendant by such trustees for the benefit of said dissolved corporation" and ever since has participated in the prosecution of the same for the benefit of any and all persons interested therein.

The Southwest Missouri Water Works Company stock was issued to plaintiffs. O. F. Webster transferred all of said public utility property to said corporation for said stock on January 23, 1935. After said transfer, the officers of said corporation "including Webster as president and manager and chief stockholder, took charge of and operated and .continued to operate said property as a public utility until it went out of business as a utility and as a result of the wrongful acts of said defendant . . . "

The city of Joplin in 1933 instituted proceedings before the Public Service Commission to require defendant to extend its lines into the territory served by O. F. Webster "so that fire protection" be afforded said territory, making O. F. Webster a party to said proceedings. Webster participated in said proceedings until the order of the Commission of August, 1935, was entered overruling the motion of the Southwest Missouri Water Works Company for a rehearing on orders made July 12, 1935, and July 22, 1935.

The Public Service Commission, on April 23, 1934, ordered Webster to file plans and specifications for the "enlargement or reconstruction and rehabilitation" of his water utility to comply with certain requirements and furnish fire protection. These plans and specifications were filed on July 23, 1934, in the.name of the Southwest Missouri Water Works Company and, showed "that the water works system was to become the Southwest Missouri Water Works Company, a corporation," and that said corporation had not received its charter. On February 13, 1935, said Commission ordered Webster to take whatever steps were necessary to "rehabilitate and reconstruct" said water utility property and report within thirty days whether he had been able to finance and perfect arrangements therefor. This time was later extended for an additional sixty days. On May 3, 1935, the Southwest Missouri Water Works Company received its charter and had the same recorded in Jasper county, Missouri, May 9, 1935. The city council of Joplin on May 14, 1935, authorized the making of a contract with the Southwest Missouri Water Works Company for a certain number of fire hydrants in its territory, of which proceedings defendant knew and endeavored to have completed. On May 15, 1935, said Southwest Missouri Water Works Company was authorized by its stockholders to mortgage its property; but on May 27, 1935, said company reported that it had been unable to finance the rehabilitation of its water utility property as ordered by said Commission. A copy of this report was sent by the Commission to defendant on May 28, 1935. Thereafter, on July 12, 1935, the Public Service Commission, upon findings made, ordered defendant to extend its lines into the territory aforesaid and furnish water utility service to persons "not at this time furnished by O. F. Webster." Defendant on July 22, 1935, filed a motion for clarification and on said date said Commission made a. supplemental order modi-

fying its original order as follows: "and to be in readiness to service and serve at any time any present customer of Oscar Webster who may at any future date elect to require of said Joplin Water Works Company a service connection and water service." On August 1, 1935, the Southwest Missouri Water Works Company filed objections to and a request for a rehearing of said order of modification, which (quoted) "request of the Southwest Missouri Water Works Company, otherwise known as O. F. Webster as owner of the water system" was denied on August 24, 1935. This order became final.

In December, 1935, the Southwest Missouri Water Works Company instituted a proceeding to enjoin defendant from entering its territory. Defendant filed a demurrer. The proceeding was dismissed after, according to the petition, plaintiffs' property had been destroyed.

Following defendant's objection to the introduction of any evidence, the petition was amended, evidently to crystallize the issue, by adding the following:

"Plaintiffs further allege that no application was made by the said O. F. Webster to the Public Service Commission of the State of Missouri for a written order or any order to transfer the property in question to the Southwest Missouri Water Works Company, and that no written order was granted, issued or entered by the Public Service Commission to O. F. Webster to transfer his said property to the Southwest Missouri Water Works Company; that no application was made to the Public Service Commission of Missouri for an order to issue the corporation stock in question and that no written order or order was granted by the Commission to the Southwest Missouri Water Works Company to issue said stock or to transfer said stock to said stockholders; that all of said property in question was used by Webster for many years as said utility property, and that in the conveyance by Webster to said corporation all of said property was conveyed to said Southwest Missouri Water Works Company as utility property and for utility purposes and was necessary and useful in the operation of said utility business by said Southwest Missouri Water Works Company, and further allege that it was necessary and useful to the performance of O. F. Webster's duties as a public utility at the time of said conveyance by Webster of the said franchise and said water works utility to said corporation, Southwest Missouri Water Works Company."

An added second paragraph alleged that the Southwest Missouri Water Works Company never held any franchise from Jasper county or certificate of public convenience and necessity from the Public Service Commission and that Webster's franchise and certificate of convenience and necessity were valid and existed at the time of the attempted transfer from Webster to said corporation.

Plaintiffs' petition charged and the court nisi took extra precaution before ruling upon defendant's objection in understanding plaintiffs' counsel admitted that all the property damaged by defendant was public utility property useful and necessary at said time in the conduct of the water utility business in the territory served and that no effort was being made to recover damages for the destruction of any other kind of property.

The petition (as well as oral statements made by counsel for plaintiffs before the court nisi) proceeded upon the theory ▆▆▆▆ that ownership of the property at the time of its destruction by defendant was in the Southwest Missouri Water Works Company, the corporation; that is, that said corporation as a legal entity suffered the damages and the cause of action originally accrued to it as such owner. Plaintiffs' petition did not plead and the proceeding was not instituted and maintained on the theory a cause of action accrued to and existed in Oscar F. Webster as an individual, which cause of action was by him thereafter and subsequent to the destruction of the property as utility property assigned and transferred to said Southwest Missouri Water Works Company. Plaintiffs' point constructed upon such theory is disallowed.

▆▆▆ What was the effect of the alleged sale and transfer in 1935 of the water utility by Webster to the Southwest Missouri Water Works Company?.

The term "water corporation," as used in the Public Service Commission law "includes every corporation . . . partnership and person . . . owning . . . any plant or property . . . distributing or selling for distribution, or selling or supplying for gain any water." Sec. 5578, Subsec. 21, R. S. 1939. Webster was within these provisions of that act.

Section 5651, R. S. 1939, provides: "1. No . . . water corporation shall hereafter sell, assign, lease, transfer, mortgage or otherwise dispose of or encumber the whole or any part of its franchise, works or system, necessary or useful in the performance of its duties to the public, nor by any means, direct or indirect, merge or consolidate such works or system, or franchises, or any part thereof, with any other corporation, person or public utility, without having first secured from the commission an order authorizing it so to do. Every such sale, assignment, lease, transfer, mortgage, disposition, encumbrance, merger or consolidation made other than in accordance with the order of the commission authorizing same shall be void. .· . . Nothing in this subsection contained shall be construed to prevent the sale . . . by any . . . public utility . . . of property which is not necessary or useful in the performance of its duties to the public, and any sale of its property by such . . . public utility shall be conclusively presumed to have been of property which is not useful or necessary in the performance of its duties to the

public, as to any purchaser of such property in good faith for value.''

We think the case turns on the provisions of Sec. 5651, but with respect to the issuance and sale of stocks et cetera, by public utilities, Sec. 5654, R. S. 1939, provides in part:

''2. All stock, and every bond, note or other evidence of indebtedness of a . . . water corporation issued without an order of the commission authorizing the same then in effect shall be void . . . '' Consult Subsecs. 1 and 2.

The issue thus presented is whether by virtue of Sec. 5651, supra, the attempted transfer by Webster to the Southwest Missouri Water Works Company, the corporation, was void as to strangers to such transfer. We think so because the statute so provides and the Southwest Missouri Water Works Company was not a purchaser in good faith for value within the language of the statute or of Dearborn El. L. & P. Co. v. Jones, 7 Fed. 2d 806, 807 [2]. To hold otherwise would render that valid which the law says is void. Mr. Webster was the principal stockholder and chief executive officer of the Southwest Missouri Water Works Company, and the corporate entity cannot be said to have had ''an honest, legally justifiable, belief'' that Webster, in the circumstances, had the right to sell and transfer title. Consult 7 Fed. 2d l. c. 808.

The Public Service Commission's order of February 13, 1935, authorizing Webster ''to take whatever steps were necessary to rehabilitate and reconstruct the water works system'' et cetera was not an order authorizing the reorganization of a ''water corporation'' under Sec. 5657, R. S. 1939, relating to ''reorganizations''; but an order to rehabilitate and reconstruct a water works system under other applicable provisions of the Public Service Commission law. At any event, it was not an order absolving Webster from the consequences of violating positive legislative enactments. The Public Service Commission of the State of Missouri possesses no such authority.

Plaintiffs say the contention that the transfer of utility property is void can only be raised by the State or as provided by the Public Service Commission act, referring, in connection with the latter, to the provisions of the act with respect to hearings before the Public Service Commission. Plaintiffs stress dictum in Webster Mfg. Co. v. Byrnes (1929), 207 Cal. 630, 280 Pac. 101, 107, on the proposition that the State only can raise the issue. There, however, the particular utility property was not as of the time involved subject to the provisions of the public utility act of California, such utilities not coming under its provision until sometime thereafter (280 Pac. l. c. 104[1], 106[13], 105 [8]). The later California case of Slater v. Shell Oil Co. (1940), 39 Cal. App. 2d 535, 547, 103 Pac. 2d 1043, 1050[9, 12], had occasion to pass more directly upon the instant issue, and said: ''It is to be noted that this provision declares every transfer

without the consent of the Railroad Commission is void. That the section means what it plainly states, that a purported transfer in violation of the statute confers no rights on the transferee, and that third persons may raise this defense, is clearly established by the following cases: [Citing cases.] . . . That transfer, however, for reasons already stated, was void. For that corporation to seek dissolution while still owning property devoted to a public use, without disclosing that fact to the Superior Court was a legal fraud upon that court, rendering the decree, insofar as it purported to expressly or by operation of law transfer the property to the company devoted to a public use, subject to collateral attack.'' See also Borg v. Illinois Term. Co. (C. C. A.), 16 Fed. 2d 988, 989[1]; Chicago & W. I. Rd. Co. v. Englestein, 333 Ill. 117, 164 N. E. 189. Cooper County Bank v. Bank of Bunceton, 221 Mo. App. 814, 822, 288 S. W. 95, 99[5], permitted the purchaser of a note and deed of trust of a public utility to rescind the transaction on the theory the original transaction was void, stating in disallowing the defense that the purchaser might have but failed to procure the validation of the transaction by the Public Service Commission: ''We find no law, nor are we cited to any, whereby the Public Service Commission is given power to validate a deed of trust which is void under the statute. The statute declares that an incumbrance made other than in accordance with the statute is void, and, being void, the commission is not authorized to make it valid.'' Under the foregoing authorities the validity of a void transfer of public utility property is subject to collateral attack. The sections of the Public Service Commission act mentioned by plaintiffs—sections relating to the right of parties to make complaint to (Sec. 5686, R. S. 1939), or apply for a rehearing before (Sec. 5689) the Commission, or making its orders conclusive in collateral proceedings (Sec. 5694) or upon whom the burden of proof rests (Sec. 5703)—do not preclude a third party litigant invoking the protection of provisions of that act when sued by one having no interest in the cause of action, if any, otherwise stated against him in the pleadings.

Defendant is not questioning the corporate existence of the Southwest Missouri Water Works Company or its right to do business in this state. It questions its right to maintain this action on the theory its pleading shows it did not originally have and never has acquired a right of action, if any existed, against defendant. Plaintiffs' contention on this score is disallowed.

Plaintiffs make the point that the transfer was in good faith and for value and, in the circumstances, the term "void" is given the meaning of ''voidable,'' citing Dearborn El. L. & P. Co. v. Jones (C. C. A.), 7 Fed. 2d 806, 807[2], which states: ''The elements which make a purchaser in good faith for value are: An actual sale, a present consideration and an honest, legally justifiable, belief that the vendor has the right to sell.'' Webster was the majority stockholder,

the president, a member of the board of directors and manager of the Southwest Missouri Water Works Company, and knew or was charged with knowledge that no order of the Public Service Commission authorizing the transfer had been made. The Southwest Missouri Water Works Company was not a purchaser in good faith for value within the quoted language.

We find nothing in the record to sustain plaintiffs' contention that defendant is estopped to interpose this defense. The contention here is based upon allegations in the petition allegedly sufficient to work an estoppel as to Webster and the statement that defendant, a wrong-doer, cannot claim any greater rights in Webster and through Webster and on behalf of Webster than Webster could assert in himself. This might be well enough if Webster or a privy of his were defendant. The trouble is that plaintiffs, and not defendant, are claiming under, by, and through Webster. The Southwest Missouri Water Works Company was the grantee in Webster's transfer, had ample power to protect its interest, and its successors, plaintiffs not defendant, succeed to the fruits of its action or nonaction in its dealings with Webster. The point is disallowed.

On *September 14, 1942*, plaintiffs and Oscar F. Webster filed a motion, assertedly on account of allegations in defendant's answer, asking that said Webster individually be made a party plaintiff "to assure defendant" full protection against said Webster, individually. Plaintiffs now assert error in the overruling of said motion. It is apparent from defendant's answer, mentioned in said motion, as well as from what we have said, that there existed no community of interest between Webster as an individual, on the one hand, and plaintiffs as trustees, on the other, in the subject matter of the cause of action against defendant. The ultimate purpose of the motion if plaintiffs are to urge its overruling as error here was (not assurance to defendant but) to substitute said Webster as the real party in interest in lieu of the trustees named as party plaintiff. Generally a mistake as to the proper party plaintiff compelled an abandonment of the action and the institution of proceedings de novo at common law. 1 Chitty, Pleading (7th Eng. Ed.) *1, *69. Plaintiffs say the substitution was authorized under Sec. 971, R. S. 1939, reading:

"The court may, at any time before final judgment in furtherance of justice . . . amend any record, pleading, . . . or other proceedings, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, . . . or when the amendment does not change substantially the claim or defense, by conforming the pleading or proceedng to the facts proved."

The statute speaks of "adding," not "substituting," the name of a party.

Statements in some cases indicate a doubt as to the scope of prior holdings permitting and refusing amendments adding or substituting

parties plaintiff. See Glover & Son Comm. Co. v. Abilene Mill. Co., 136 Mo. App. 365, 369, 116 S. W. 1112, 1113, and Turner v. Noble, 211 Mo. App. 656, 662, 249 S. W. 103, 104. We think the statements too broad. The substitution of a party plaintiff and the relation back of the substitution to defeat limitations are different issues but for practical reasons cases usually involve both issues. Our review of the Missouri cases leads to the conclusion, perhaps not too precisely stated: One having a joint interest may be added as a party plaintiff and the joinder will relate back to the original institution of the action or (more to the instant case) in extreme situations, accompanied by peculiar facts, the real party in interest may be substituted with like effect where the pleading discloses that the action in fact was being prosecuted in the interest of said substituted plaintiff; but such real party in interest may not be substituted as plaintiff to avoid limitations where the pleading shows that the original plaintiff was a stranger to and could have no interest in the cause of action and fails to show that the action was being prosecuted in the interest of said real party in interest.

In Lilly v. Tobbein, 103 Mo. 477, 490(4, 5), 15 S. W. 618, 620, 23 Am. St. Rep. 887, members (on behalf of themselves and other members) of an unincorporated church association were permitted to be substituted (the opinion refers to now Sec. 971, supra, treating of "adding" parties) for the unincorporated church association after the running of the statutory period of limitation where the unincorporated church association had instituted the action within the statutory period. That case had several distinguishing features. The court expressed doubt that a judgment for the voluntary association would have been void; was of opinion the reversal (The Catholic Church v. Tobbein, 82 Mo. 418) of a former judgment sustaining plaintiff's cause was error. ("On the conceded facts, this will should have been probated at the outset . . . "); but an underlying reason was: "The suit has been, from first to last, prosecuted in the interest of the church, and we entertain no doubt but the amendment substituting the individual plaintiffs for the unincorporated association related back to the commencement of the suit and the statute of limitation was arrested at that time." A like situation existed in Hackett v. Van Frank, 119 Mo. App. 648, 650, 657, 96 S. W. 247, 248, 250, where attorneys inadvertently instituted the action in the name of a nonexistent partnership, the substituted corporate plaintiff, the real party in interest, having continued the retail business in the name of the partnership after the formation of the corporation. The Hackett opinion also states (658 and 251, respectively) "timely application was made as soon as the mistake in the parties plaintiff was discovered, due notice of an intention to ask leave to amend was given . . . , and, as the demand will be outlawed by limitation if this suit is abated, we deem it proper to reverse the

judgment and remand'' with directions permitting the substitution of the corporate party plaintiff. See. also Drakopulos v. Biddle, 288 Mo. 424, 430, 231 S. W. 924, 925[1].

Russell v. Nelson, 317 Mo. 148, 155, 295 S. W. 118, 122[5-7], was a suit to contest a will and earlier cases bearing on the instant issue were reviewed. That case holds that where an original plaintiff never had the cause of action sued on, could never have maintained the same on the facts pleaded, and on the facts pleaded was entirely out of the case; that is, was an utter stranger to the cause of action, the proceeding could not be saved from limitation by ''adding'' (really substituting) the real party in interest as plaintiff. Usually amendments are allowed, occasionally they are refused; but Sec. 971, supra, does not authorize an amendment substituting the only party in interest or a complete substitution of parties plaintiff. Meyer v. Oregon Interurban Ry. Co., 219 Mo. App. 360, 364, 271 S. W. 865, 867[2], and cases cited. Consult Arrowood v. Delaney's Est. (Mo. App.), 295 S. W. 522, 524[5]; Altheimer v. Teuscher, 47 Mo. App. 284, 286, and cases; Annotation, 135 A. L. R. 325.

Cases like Cytron v. St. Louis Transit Co. (Banc), 205 Mo. 692, 698 et seq., 104 S. W. 109, 111 (suit for a minor's death); Gresham v. Talbot, 326 Mo. 517, 524, 31 S. W. 2d 766, 768[2] (suit to contest will presenting the reverse to Russell v. Nelson, supra)—holding an action timely instituted by a party in interest tolls limitations as to others having a joint interest and is not barred by the mere fact that other joint parties are not added until after the running of the statutory time—are not this case. The Cytron case makes plain that the ''one year'' provisions for instituting actions for death (Sec. 3656, R. S. 1939) is ''one of limitation and repose.'' Fair v. Agur, 345 Mo. 394, 397[1, 2], 133 S. W. 2d 402[1, 3] holds, following earlier Missouri cases, that the real party in interest may not be substituted party plaintiff subsequent to the running of limitations in an action for death instituted within the limitation period by a then stranger to the cause of action. Consult cases there cited.

Under the Missouri cases, the instant motion to amend was properly overruled.

■ Plaintiffs sought to file a reply containing several different pleas to defendant's answer. The trial court restricted the reply to a general denial. Plaintiffs claim error. They say the court erred in striking their plea of estoppel from the reply; in striking their allegations of good faith on the part of Webster and the Southwest Missouri Water Works Company, coupled with a plea of a mistake of fact; in striking their plea of assignment by Webster of whatever rights he might have in the cause of action to plaintiffs; and in striking their plea to the effect defendant was collaterally attacking the transfer by Webster to the Southwest Missouri Water Works Company. Our discussions and rulings hereinbefore sufficiently cover

such of these contentions as are not hereinafter mentioned. We dispose of the other asserted errors in as general language as presented for review. Our examination of the whole of the instant record fails to disclose actions by defendant estopping it from interposing the defense relied upon. With respect to Webster's assignment of any cause of action, it is sufficient to say that the petition failed to state a cause of action and that it was the function of the petition and not the function of the reply to state the cause of action. Baker v. Lamar (Mo.), 140 S. W. 31, 34[8]; Daniel v. Pryor (Mo.), 227 S. W. 102, 105[5]; Neal v. Twelfth & Grand Ave. Bldg. Co., 228 Mo. App. 536, 541, 70 S. W. 2d 136, 139[4]; Kent v. City of Trenton (Mo.), 48 S. W. 2d 571, 575[2] (stating: ''Plaintiffs must recover, if at all, upon the cause of action stated in the petition, and, if none is stated, a reply cannot aid the petition.'')

The judgment is affirmed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.