George W. GOLL, Sr., and John P. Goll, Jr., Plaintiffs-Respondents,

v.

Denzil KAHLER and Rodney Kahler, Defendants-Appellants.

No. 24737.

Kansas City Court of Appeals.

Missouri.

Dec. 4, 1967.

James J. Wheeler, Keytesville, for appellants.

Jack Lukehart, Brunswick, for respondents.

JAMES W. BROADDUS, Special Commissioner.

This is an appeal by defendants from an order of the Circuit Court of Chariton County overruling their motion to revoke an order appointing a receiver.

On November 11, 1966, plaintiffs (Respondents here) filed a petition for injunction praying the court to enter its order restraining the defendants from violating an agreement concerning the division of the crop on the land described in said petition.

On November 15, 1966, plaintiffs filed a motion for the appointment of a receiver. The transcript recites that said motion was "presented with attorneys for all parties present and heard. Motion for appointment of receiver sustained and C. S. Bittiker appointed receiver to harvest crop on lands described and preserve same. Bond of receiver fixed at $5000." On November 22,

1966, said "Receiver's Bond was filed and approved."

In their motion plaintiffs allege that they own, or are authorized to act as agents, concerning the care and management of certain land in Chariton County (describing said land.)

Plaintiffs further allege that defendant Denzil Kahler is a tenant of the tillable portion of said real-estate under an agreement which provided that seed and fertilizer used on the tillable portion of the real-estate would be paid for on a 50–50 basis; that the corn raised on the tillable portion of said real-estate would be divided on a 50–50 basis; that plaintiffs would have the right of entry onto the tillable portion of said ground to harvest their share of the crop; that said crop would be harvested on the basis that Denzil Kahler would pick four rows of corn and leave four rows for plaintiffs, thus alternating throughout the field.

It is further alleged that defendants have refused to allow plaintiffs on the land for the purpose of picking their corn, as the agreement provided; that defendants have stated that they will not allow plaintiffs on the land to pick the corn; that they will pick the entire crop, and that plaintiffs will pay them for so doing; that defendant Denzil Kahler has stated that plaintiffs have refused to pay bills incurred against them and that he, the said Denzil Kahler, will take quantities of plaintiffs' corn to pay said alleged bills, although defendant Denzil Kahler has no interest in the payment of said bills and, in fact, the plaintiffs owe no bills for which defendant Denzil Kahler would be responsible for in any manner; that defendant Denzil Kahler has, the plaintiffs believe, already picked one-half or more of said crop, and still the said defendants will not allow plaintiffs on the land to pick their share of the crop.

It is further alleged that unless plaintiffs are allowed on said real-estate to pick their corn, they would receive irreparable damage by not being allowed to pick said corn until the termination of the oral lease above referred to; that defendants are unsettled in their financial affairs and have numerous creditors.

It is also alleged that defendants have picked a large portion of the corn, and plaintiffs do not know where said corn is, so that it can be determined how much corn has been picked and if defendants have picked more than their share of the crop; that plaintiffs believe that their share of the crop has been or will be misappropriated, and that this will continue unless a receiver is appointed; that a receiver should be appointed to prevent loss, waste, destruction, irreparable injury and the defeat of plaintiffs' rights; that plaintiffs have no adequate remedy at law.

On December 6, 1966, defendants filed their motion to revoke the order appointing the receiver and the motion was heard on December 8. At that hearing the evidence was that plaintiff George W. Goll, Sr., and his wife own an undivided one-half interest in the land involved, and John P. Goll, Sr., and his wife own the other one-half interest. John P. Goll, Jr., acted as agent for his father and mother, Mr. and Mrs. John P. Goll, Sr., in the management of the farm. John P. Goll, Sr., has been an invalid for seven years.

George W. Goll, Sr., testified that since 1959, he had been "primarily responsible for the management" of the land and that Denzil Kahler had been the tenant. Denzil and his son, Rodney Kahler, farmed the land together, and Denzil claimed that Rodney was also a tenant, although this was denied by Goll.

Denzil Kahler testified that there was "nothing definite" about the crop arrangements for the year 1966. In prior years he received two-thirds of the crop and the Golls one-third. He paid two-thirds of the cost of the fertilizer and the Golls one-third. During those prior years Denzil stated that he paid for all the seed corn. He testified that he was claiming two-thirds

of the crop for 1966; that two loads of grain were placed in an elevator in the name of Kahler and Goll and that he (Kahler) collected for one-half of each of these loads. Denzil Kahler further testified that when he purchased seed corn and fertilizer for the year 1966, he had one-half of the cost thereof billed to the Golls.

At the hearing defendants asserted that they had picked only one-half of the corn on the farm.

Plaintiff, George W. Goll, Sr., testified that during the fall of 1965, he discussed with Denzil Kahler the fact that we (the Golls) "would like to enter into an agreement 50–50 and pay half the cost and he said it would be perfectly all right with him." Mr. Goll further testified that he received bills for fifty percent of the expenses; that some of these bills "seemed unusually large;" that in September 1966, "he discussed these bills" with Denzil Kahler and the latter said: "That's what it amounts to and that's what I used and you've got 200 acres or better, down there of tillable land and we had it all in, and I said 'Kahler, I hope we have got it but in my years of fooling with it, I've never known it to be 200 acres of tillable land as yet down there because it's not all cleared up.' He said: 'Well, it's there', and I said: 'Well, how can we find out about it?' And he said, 'Well, why don't you have the ASC office check it.'" According to the ASC survey there were 165 and some tenths acres of tillable land on the farm. Mr. George W. Goll, Sr., further stated that after receiving this information he went to see Kahler and said: "'Denzil I'm back down here, I've been to the ASC office and want to tell you what I found out and see if we can't get together on these bills.' He said: 'I don't give a damn what the ASC office said,' he said, 'I've farmed that land long enough to know more about it than anybody,' so he said: 'I don't want to even hear about it.' 'Another thing,' he said, 'I'm going to go back to this 50–50 contract, go back to two-thirds and one-third unless you right now give me a two-year contract,

O.K. it on my terms for the rental of the land again.'" And, "he said, if I didn't do certain things that he was going to take more of the corn. I think he even worded it, 'I'm going to steal enough to pay for it' the very statement that he made," that "because of the disagreement and the fact that he made this statement of what he was going to do I took it up with Mr. Lukehart (plaintiffs' attorney) and he called the meeting with the two Kahlers, myself, and young Goll"; that at this meeting it was agreed that the Kahlers would pick four rows of corn "and leave four and continue across the field in that manner, that each man would get the short rows or long rows just as they came and nobody would get much advantage."

The farm involved was described as low ground, subject to overflow, tends to get pretty wet, receives flood damage about three years out of five. Mr. Goll was asked: "Now, you stated your background concerning this land, based upon your background and experience with this land is it your opinion that unless this corn is gathered it would stand to be lost? Well, yes there will be considerable damage or loss. Of course, that is contingent on the type of weather we have."

The evidence disclosed that plaintiffs were denied access to the land to harvest any part of the crop, and the land was posted by defendants against trespassing some two weeks before the hearing.

There are many cases in the State holding that the power to appoint a receiver rests within the sound discretion of the trial court. Stark v. Grimes, 88 Mo.App. 409; Abramsky v. Abramsky, 261 Mo. 117, 168 S.W. 1178; State ex rel. Mueller v. Wurdeman, Mo.Sup., 232 S.W. 1002; State ex rel. Hampe v. Ittner, 304 Mo. 135, 263 S.W. 158; Purvis v. Hardin, 343 Mo. 652, 122 S.W.2d 936. As stated in the *Abramsky* case, supra: "The power of a court of general jurisdiction, as is a circuit court, to appoint receivers is vested by our statute (now Sect. 515.240, V.A.M.S. 1959) in the

sound discretion of such courts. For the statute says:

" 'The court or any judge thereof in vacation, shall have power to appoint a receiver, whenever such appointment shall be deemed necessary * * *.' "

"If the statutory words 'whenever such appointment shall be deemed necessary,' do not vest in a circuit judge a discretion (Stark v. Grimes, 88 Mo.App. 409, Cantwell v. Columbia Lead Co., 199 Mo. 1, 97 S.W. 167), in such behalf so broad as *only to be a matter of review by us in case of palpable abuse*, we fail to read it correctly." (Emphasis ours.)

 In support of their contention that the court erred in overruling their motion defendants cite cases holding that facts must be pleaded and proven that plaintiffs have some right, title or interest in or lien on the property sought to be subjected to receivership. They then assert: "Plaintiffs failed to prove any agreement by defendants that defendants would leave part of the corn in the field. The petition alleges this a part of the lease agreement. The proof shows nothing but a discussion, really an argument, between the parties in September, without consideration, without being in writing, and with no possible meeting of the minds." In our opinion the evidence did establish such an agreement. The admitted fact that defendants sent bills to plaintiffs for one-half of the cost of the seed corn and fertilizer for the year 1966, is a tacit admission that the crop for that year would be divided on a 50–50 basis. The agreement was not without consideration (Feinberg v. Pfeiffer Co., Mo.App., 322 S.W.2d 163, 167) and, under the statute (Sect. 432.010, V.A.M.S. 1959) it did not have to be in writing.

 In support of their argument that plaintiffs had an adequate remedy at law defendants cite the case of Hill v. Brothers, Mo.App., 217 S.W. 581. On its facts that case is clearly distinguishable from the instant case. There the plaintiff was a tenant on a farm owned by one Disher. Disher entered into a contract to sell the farm to defendant on October 15, 1917, at which time the plaintiff had 40 acres of land prepared for sowing wheat. Disher agreed to give possession of the farm to defendant on or before March 1, 1918. The plaintiff went ahead and seeded the 40 acres in wheat. The plaintiff gave up possession of the farm in January, 1918, and the defendant went into possession in February. A temporary injunction restraining the defendant from interfering with the plaintiff in entering and harvesting one-half of the crop was issued on June 1, 1918. A motion to dissolve the injunction was filed on December 2, 1918, and was taken up by the court on April 15, 1919, at which time the temporary injunction was dissolved and the petition dismissed. The opinion pointed out that it was perfectly apparent that at the time the lower court sustained the motion to dissolve "the wheat had been cut and threshed for nearly a year." In affirming the lower court's judgment dissolving the temporary injunction the opinion stated that the evidence showed the "defendant was entirely solvent" and able to pay any damage to which the plaintiff might have been entitled. In the instant case the petition alleged that defendant Denzil Kahler was "not financially responsible." From the admissions made by him on cross-examination the inference can easily be drawn that that allegation was true.

Defendants also contend that the court erred in overruling their motion to revoke the order appointing a receiver "when the evidence established that there were persons who were interested in the subject matter of the litigation who were not parties to the action."

As we have stated John P. Goll, Sr., and his wife owned an undivided one-half interest in the land involved. They were not named as plaintiffs in the injunction suit. Neither was the wife of George W. Goll, Sr.

 Appointment of a receiver is no part of the cause of action. It is merely inci-

dental thereto. Simplex Paper Corp. v. Standard Corrugated Box Co., 231 Mo.App. 764, 97 S.W.2d 862. The rights of the defendants would not be prejudiced by the addition of parties plaintiff during the proceedings in the main case, which in this instance is the injunction suit.

Sect. 507.030 V.A.M.S. 1959, provides that when a complete determination of a controversy cannot be had without the presence of other parties, the court may order them to be brought in by amendment of the petition. And the case of Webster et al. v. Joplin Water Works Co., 352 Mo. 327, 177 S.W.2d 447, holds that one having a joint interest may be added as a party plaintiff and the joinder will relate back to the original institution of the action.

In the case of McDonnell et al. v. Cornelison, Mo.App., 25 S.W.2d 558, plaintiff McDonnell sought to recover on a verbal contract for the rental of a farm. The suit arose in the justice court. During the progress of the trial in the circuit court it developed that plaintiff was not the sole owner of the premises but that A. G. Spencer and Emmett McDonnell were joint owners with him. The trial court permitted the petition to be amended by adding the additional parties, which this court held was proper. Defendants' contention lacks merit.

From the facts in the instant case we believe that the trial court did not abuse its discretion and properly overruled the motion to revoke the order appointing the receiver. The judgment should be affirmed. Your Special Commissioner so recommends.

PER CURIAM:

The foregoing opinion by BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court and the judgment is affirmed.

HOWARD, P. J., CROSS, J., and CAVE, Special Judge, concur.

MORGAN, J., not participating because not a member of the court when the cause was submitted.