**Harley C. McDANIEL and Delores M. McDaniel, Respondents,**

**Standard Bank & Trust, Intervenor/Respondent,**

v.

**PARK PLACE CARE CENTER, INC., William W. Merrion, Trustee and William W. Merrion, Individually, Defendants/Appellants.**

**No. 50555.**

Missouri Court of Appeals, Western District.

Jan. 23, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 1996.

Application to Transfer Denied April 23, 1996.

G. Spencer Miller, Kansas City, for appellants.

H. Kent Desselle, Independence, for respondent McDaniels.

Benny Harding, Kansas City, for intervenor/respondent Standard State Bank.

Before ELLIS, P.J., and HANNA and SPINDEN, JJ.

HANNA, Judge.

Intervenor/Plaintiff, Standard Bank & Trust (SBT), sought specific performance of a settlement agreement between itself and William W. Merrion, individually, William W. Merrion, Trustee, the William W. Merrion Trust, and Park Place Care Center, Inc. (Defendants). SBT claimed the settlement involved an assignment by SBT to the defendants of a promissory note and its collateral for a sum of $275,000. The trial court determined that the parties had entered into a valid, enforceable agreement for the settlement of the litigation pending between them. The defendants raise three issues in their appeal from the trial court's determination. First, the defendants claim that an involuntary bankruptcy petition filed by Merrion against McDaniel automatically stayed the trial court from proceeding with the litigation. Second, the defendants claim that the oral agreement was not enforceable because it violated the statute of frauds. Finally, the defendants argue that there was no substan-

tial evidence to support the trial court's finding that there was a meeting of the minds.

The McDaniels were originally the sole owners of Park Place Care Center, Inc., a nursing home in Raytown. They sold 75% of their interest to Merrion in his capacity as trustee for the Merrion Trust. In the underlying action the McDaniels filed suit against the defendants alleging that they had taken over control of the nursing home, misappropriated funds, and withheld profits due the McDaniels. The McDaniels sought a judicial determination of the legal relationship with the defendants and sought alternative legal and equitable relief.

SBT made a $700,000 loan to Mr. McDaniel for his company, Inter–City Excavating. The loan was secured in part by a collateral assignment of McDaniels' share of the partnership income from the nursing home. The McDaniels also jointly executed a Collateral Assignment of Interest which granted SBT a 75% interest in the proceeds of the litigation between the McDaniels and the defendants up to a sum of $200,000. Inter–City Excavating defaulted on this loan.

SBT filed a motion to intervene in the action brought by the McDaniels against the defendants, which the trial court denied. On appeal, this court reversed and ordered that SBT be allowed to intervene.[1] After remand, SBT filed a petition for declaratory judgment seeking a declaration of legal relationships and liabilities of the parties.

The trial court determined that SBT and the defendants entered into an oral settlement agreement wherein SBT would deliver the note and collateral documents to the defendants in exchange for $275,000.

There were extensive settlement discussions between the parties while the underlying litigation continued. The evidence favorable to the trial court's determination and its findings of fact shows that on October 6, 1994, Merrion and his attorney appeared for the continuation of his deposition at the offices of counsel for SBT. Prior to resuming the deposition, Merrion met privately with Gregory of SBT. Gregory told Merrion that he would settle for $300,000. Merrion re-

plied that he would "split the difference." When Gregory asked what he meant by that, Merrion said that he would offer $275,000 for the purchase of the note and its collateral. Gregory said that they had a deal and the two shook hands.

Merrion and Gregory then rejoined their attorneys. Gregory announced that Merrion had agreed to purchase the note for $275,000. Counsel for SBT had previously prepared a settlement agreement, which included all of the terms of the agreement except the correct price, which was interlineated during the ensuing discussion. Gregory went through each of the provisions of the agreement by paraphrasing them and Merrion indicated that he agreed with each provision. The agreement required SBT to convey its note and collateral position in the assignment of interest in partnership income to Merrion.

After reviewing the document, Merrion stated that he wanted another attorney to review the form of the agreement. Gregory responded that if there was no settlement agreement, then the deposition would go forward, and that, although he was scheduled to leave town, he would only do so if he was assured that there was a settlement agreement. Merrion assured Gregory that they had an agreement. They again shook hands and Merrion left with his attorney.

Merrion subsequently refused to honor the settlement agreement with SBT. SBT moved to enforce the settlement agreement and a hearing was held on December 1, 1994. On December 2, 1994, defendants filed an involuntary petition in the United States Bankruptcy Court for the Western District of Missouri forcing the McDaniels into bankruptcy. On December 5, 1994, the trial court continued the hearing on the motion to enforce the settlement agreement. The trial court acknowledged receipt of a copy of the bankruptcy petition and heard arguments regarding the effect of the petition on the settlement. At the close of all evidence and argument, the trial court sustained SBT's motion to enforce the settlement agreement.

■ Defendants first contend that the trial court's order enforcing the settlement is

1. *McDaniel v. Park Place Care Ctr., Inc.*, 861 S.W.2d 179 (Mo.App.1993).

void *ab initio* because the filing of the involuntary bankruptcy petition automatically stayed the proceedings. Defendants argue that since the bankruptcy court did not order relief from the automatic stay, the trial court was without jurisdiction to order the enforcement of the settlement agreement. Defendants claim that the automatic stay is applicable to the motion because it is part of a proceeding originally brought against the debtor, McDaniel, and against the property of the bankruptcy estate.

In a court tried case, our standard of review is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), and we must uphold the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32.[2]

A bankruptcy petition operates as a stay, applicable to all entities, of various types of actions to obtain affirmative relief against the debtor or his property. 11 U.S.C. § 362(a) (1993). Defendants urge that SBT should have been stayed from pursuing its motion to enforce the settlement in the trial court by virtue of the subsections of the automatic stay provision, which prohibit "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor" or "any act to obtain possession of property of the estate or of property from the estate or to exercise control over the property of the estate." *Id.*

The scope of the automatic stay is broad. *Maritime Electric Co. v. United Jersey Bank,* 959 F.2d 1194, 1204 (3rd Cir.1991). Nevertheless, the clear language of Subsection 1 of § 362(a) indicates that it stays only proceedings against the debtor. *Id.* at 1203. If estate property is not involved, the automatic stay generally protects only the debtor and not co-debtors, sureties, garnishees sub-

ject to personal liability for breach of duty, principals, officers, related corporations, and alleged alter egos. 8A C.J.S. *Bankruptcy* § 68(a) (1988). Thus, the proceedings within a single case are "disaggregated so that particular claims, counterclaims, crossclaims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay." *Maritime Electric,* 959 F.2d at 1204–05. Some actions within a single case may be stayed while others are not. *Id.* at 1204.

Defendants cite *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 449 (3rd Cir.1982), for the proposition that whether the automatic stay of § 362 applies is determined by looking at whether a proceeding was originally brought against the debtor. The *St. Croix* court held that the automatic stay provision was to be read:

> [T]o stay all appeals in proceedings that were originally brought against the debtor, regardless of whether the debtor is the appellant or appellee. Thus, whether a case is subject to the automatic stay must be determined at its inception. That determination should not change depending on the particular stage of the litigation at which the filing of the petition in bankruptcy occurs.

*Id.*

From this premise, defendants maintain that the motion to enforce the settlement agreement should have been stayed because SBT's motion to intervene sought a declaratory judgment against the debtor McDaniel. This conclusion, however, is not supported by the language of the *St. Croix* holding.

In *Maritime Electric,* the court had before it litigation between a father and son and their respective corporations. 959 F.2d at 1198. The father's corporation had filed a complaint in federal district court against the son and his corporation, alleging conversion, unjust enrichment, and fraudulent contrac-

---

2. We note that the trial court did not expressly make findings and conclusions mentioning the effect of the automatic stay. Nevertheless, the trial court was apprised of the stay issue and stated in its order:

  There is no just reason for delay in the entry of a final judgment and the taking of an appeal with regard to the issues and parties involved in this Order since this Order does not involve the Plaintiffs and fully resolves all issues pending between Defendants and Intervenor/Plaintiffs.

tion of a debt. *Id.* at 1199. The son asserted a counterclaim against the father's corporation and a third-party complaint against his father, individually and in his capacity as president of his corporation. *Id.* Thereafter, the son filed an individual voluntary Chapter 13 petition for bankruptcy relief in the United States Bankruptcy Court for the Southern District of Florida. *Id.* at 1200. Upon reviewing the *St. Croix* analysis, the *Maritime Electric* court stated: "Even if the first claim filed in a case was originally against the debtor, section 362 does not necessarily stay all other claims in the case. Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, cross-claims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay." *Id.* at 1204–05. "Where the claims against non-bankrupts are severable, the proceedings may continue against the remaining parties." *In re Phillips*, 40 B.R. 194, 196 (Bankr.D.Colo.1984); *see also In re Georgia Steel, Inc.*, 71 B.R. 903, 909 (Bankr.M.D.Ga.1987).

The court ruled that the automatic stay provisions of the Bankruptcy Code precluded the District Court from entering judgment against the son on the father's corporation's conversion claim against him, but "did not affect the District Court proceedings and judgments arising out of other claims in this case." *Maritime Electric*, 959 F.2d at 1208.

■ SBT's motion for the enforcement of the settlement agreement was collateral to the litigation involving the McDaniels. It was not an action against the debtor McDaniel. It was severable and not automatically stayed under § 362 as an action against the debtor. Moreover, in determining whether the automatic stay of § 362 applies, we must look to whether a proceeding was originally brought against the debtor. *St. Croix*, 682 F.2d at 449. The first claim filed in this case was not against the debtor McDaniel, but was an action brought by the debtor McDaniel against the defendants.

■ Defendants also contend that the motion for enforcement of settlement should have been stayed because it involved the property of the debtor McDaniel, i.e., the promissory note and attendant collateral agreements. Subsection 3 of § 362(a) prohibits any act to obtain possession of or exercise control over property of the bankruptcy estate. Defendants contend that "[t]he interest of Harley McDaniel in partnership income flowing from rent under a lease agreement concerning a nursing home operation is a legal interest in property within this definition of property interest of the bankruptcy code." From this contention, the defendants conclude that the transfer of SBT's promissory note and collateral agreements is an act to exercise control over the property of the bankruptcy estate.

Defendants erroneously characterize the property at issue. The transfer of the note and attendant collateral was the transfer of SBT's property, not the property of the debtor McDaniel. SBT, as a creditor, only sought to transfer its interest against the bankruptcy estate to defendants. This type of transfer is not stayed by the filing of bankruptcy. As explained in *In re Georgia Steel, Inc.*, 71 B.R. at 909:

> [T]he automatic stay provisions of the Bankruptcy Code do not prohibit a creditor of a debtor from transferring any interest or claim it might have against the debtor's bankruptcy estate to a third party. Such a transfer merely substitutes the party that holds the interest or claim against the debtor's bankruptcy estate, and such transfer does not serve to increase or decrease the interest or claim the party asserts against the debtor's bankruptcy estate.

The automatic stay provisions of the bankruptcy code did not stay the trial court from ruling on SBT's motion to enforce the settlement agreement. The proceeding was not an action against the debtor and was not an act to obtain possession of or exercise control over property of the bankruptcy estate.

■ In their second point, the defendants claim that the oral settlement agreement violated the statute of frauds because the agreement related to the transfer of an assignment of rents and, thus, conveyed an

interest in real property. The defendants also contend that the agreement violated the statute of frauds because it could not be performed within one year. A compromise settlement does not have to be in writing unless the subject matter is within the statute of frauds. *Byrd v. Liesman*, 825 S.W.2d 38, 39 (Mo.App.1992). The trial court determined that the statute of frauds did not apply to this settlement agreement because it did not relate to the sale of an interest in real estate, but rather was an agreement to sell or assign a promissory note and collateral agreements to the defendants.

■ A transfer of an interest in real property must be memorialized in writing. § 432.060 RSMo, 1994. The issue is whether the interest to be transferred under the terms of the settlement agreement, the promissory note and the attendant collateral, was an interest in real property. The promissory note and collateral agreement in question, which were in writing, involve SBT's $700,000 loan to Harley McDaniel for his company, Inter–City Excavating. The loan was secured in part by a collateral assignment of McDaniel's share of the partnership income from the nursing home. Defendants construe this collateral assignment as an assignment of rents.

■ The collateral assignment of interest in partnership income is, by its very terms, an assignment of income from a partnership, not an assignment of an interest in real property. This assignment gives the holder no right to possession or control over the property itself. As both the trial court and this court on the previous appeal concluded, SBT only had an assignment of income that the McDaniels received from the partnership, not an assignment of rents. While no Missouri case has directly decided this issue, in *Goll v. Kahler*, 422 S.W.2d 359, 363 (Mo.App. 1967), the court held that an agreement that the landlord and tenant would split expenses and profits from a corn crop on land leased by the tenants from the landlord did not have

to be in writing under the statute of frauds. In *Martin v. Printz*, 186 Mo.App. 52, 171 S.W. 642, 643 (1914), the court held that an agreement by which one party delivered money to another party to be invested in a deed of trust was not within the statute of frauds since it merely constituted an agreement as to the disposition of the first party's money. And in *Welborn v. Rigdon*, 231 S.W.2d 127, 133 (Mo.1950), the Supreme Court ruled that an oral agreement in which one party agreed to furnish funds to improve the other party's property, which was to be sold and the proceeds divided among the parties, was not a contract for the sale of land or any interest in or concerning land within the statute of frauds. Each of these cases are analogous to the instant case in that each involves disposition of income to be derived from or money to be invested in real property. The statute of frauds does not "apply to an agreement respecting the application, disposition, or division of rents collected or received from third persons." 37 C.J.S. *Frauds, Statute of* § 115 (1943).[3]

In their argument, Defendants make passing reference as to whether the assignment of income and the underlying indebtedness could be performed within one year. This allusion is apparently an attempt to invoke the statute of frauds provision that requires that any agreement that cannot be performed within one year be in writing. § 432.010, RSMo 1994. Defendants apparently argue that this provision applies because the assignment of income covers a period longer than one year, and the indebtedness was not paid off within one year and, in fact, still existed at the time of the hearing. This reasoning, however, is misplaced. The settlement agreement merely required a transfer of SBT's interest in the partnership income in exchange for $275,000. This exchange could be performed within one year. *See Want v. Century Supply Co.*, 508 S.W.2d 515, 516 (Mo.App.1974).

---

3. Defendants also claim in the argument portion of their brief, but not in their point relied on, that SBT, through its counsel's opening statement, made a judicial admission that the agreement was for an assignment of rents, not for an assignment of partnership income. We have reviewed this opening statement in its entirety and find that it was not a clear, unequivocal admission of fact. *See Mills v. Redington*, 736 S.W.2d 522, 525 (Mo.App.1987).

In their final point on appeal, Defendants argue that no substantial evidence supports the trial court's finding that there was a meeting of the minds between the parties. On appeal, we must affirm the judgment of the trial court if it is supported by substantial evidence, is not against the weight of the evidence, and is not based on an erroneous declaration or application of the law. *Murphy v. Carron*, 536 S.W.2d at 32.

A "meeting of the minds" is necessary to create an enforceable bilateral contract. *Klamen v. Genuine Parts Co.*, 848 S.W.2d 38, 40 (Mo.App.1993). In Missouri, the court must look to the objective manifestations of the parties to determine whether a "meeting of the minds" occurred. A person's subjective intent is irrelevant. *Computer Network, Ltd. v. Purcell Tire & Rubber Co.*, 747 S.W.2d 669, 675 (Mo.App.1988).

On October 6, 1994, Mr. Merrion, in a private meeting with Mr. Gregory of SBT, offered $275,000 for the purchase of the note and its collateral. Gregory said that they had a deal and the two shook hands.

Mr. Merrion and Mr. Gregory then rejoined their attorneys and Mr. Henke. Mr. Gregory announced that Mr. Merrion had agreed to purchase the note for $275,000. Counsel for SBT had previously prepared a form of a settlement agreement including all of the terms of the agreement except the correct price, which was interlineated during the ensuing discussion. Mr. Gregory went through each of the provisions of the agreement by paraphrasing them and Mr. Merrion indicated that he agreed with each provision. The agreement required SBT to convey its note and collateral position in the assignment of interest in partnership income to Mr. Merrion.

After a review of the document, Mr. Merrion stated that he wanted another attorney to review the form of the agreement. Mr. Gregory responded that if there was no settlement agreement, then the deposition would go forward, and that, although he was scheduled to leave town, he would only do so if he was assured that there was a settlement agreement. Mr. Merrion assured Mr. Gregory that they had an agreement. They again shook hands and Mr. Merrion left with his attorney.

The judgment of the trial court that there was an agreement between Mr. Merrion and SBT is supported by substantial evidence.

The judgment of the trial court is affirmed.

All concur.